

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-337-CV

ARLO L. SCHRIVER AS TRUSTEE
OF THE SCHRIVER FAMILY TRUST                                    APPELLANT

V.

THE TEXAS DEPARTMENT OF                                         APPELLEE
TRANSPORTATION

------------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

In a single issue, appellant Arlo L. Schriver as trustee of the Schriver

Family Trust (the Trust) asserts that the trial court erred in granting the plea to

the jurisdiction filed by appellee the Texas Department of Transportation

(TxDOT).  We affirm.

## I. Background

The Trust owns approximately .251 acres of land in Tarrant County (the Property) that is subject to a twenty-year billboard lease held by Clear Channel Outdoor, Inc. (Clear Channel). In May 2006, Halff Associates, Inc. (Halff), purporting to act for TxDOT, sent a letter to the Trust stating that TxDOT intended to acquire the Property for construction of State Highway 121. Citing an independent appraisal, TxDOT (through Halff) offered to pay the Trust $293,300 for all interests in the Property. The offer directed the Trust to negotiate with any lessees or interest owners in the Property.

A few weeks later, the Trust's attorney sent a letter to Halff purporting to accept TxDOT's offer but stating that its acceptance applied to "the Trust's interest in the Property alone, exclusive of any other interests in the Property." Moreover, the Trust rejected TxDOT's directive that the Trust negotiate with lessees of the Property.

Halff's letter in response acknowledged the Trust's "acceptance" but sought to "ameliorate any misunderstanding that might have been present in [the parties'] previous communications." Specifically, the letter explained that TxDOT's offer represented one hundred percent of the appraised value, required the Trust to negotiate with any lessees so that it could provide "fee simple" title, and was "the only offer anyone will offer the Trust."

2

The Trust disputed the legality of TxDOT's requirement that the Trust negotiate with other interest owners in the Property. The Trust also expressed concern about Halff's authority to act on behalf of TxDOT and informed Halff that it would not further respond to TxDOT's offer until Halff provided documents establishing Halff's authority. Halff then sent the Trust a formal final-offer letter and explained that if the offer was not accepted within ten days, it would be deemed rejected. The letter also stated that if the Trust did not accept the offer, TxDOT would commence eminent domain proceedings to condemn the Property.

In response, the Trust stated that "we stand by our prior acceptance of TxDOT's offer to purchase the Trust's interest in the Property for the sum of $293,300.00." The Trust also again requested documentation establishing Halff's authority. Thereafter, Halff forwarded the Trust an e-mail from TxDOT discussing the Trust's assertions. TxDOT explained that "the fee simple interest . . . that has been offered, is for all interests in the property." TxDOT also disagreed with the Trust's assertion that TxDOT had to negotiate separately with each owner of an interest in the Property. Finally, TxDOT refused to close with the Trust unless the Trust would agree to dispose of all interests of any owners in the Property.

3

The Trust then filed suit against Halff and TxDOT under the Uniform Declaratory Judgments Act (UDJA), seeking declaratory relief to resolve the parties' disputes as to: (1) whether Halff had authority to negotiate on behalf of and bind TxDOT to a pre-condemnation agreement with the Trust; (2) the legality of the requirement that the Trust deal with other interest owners on TxDOT's behalf; and (3) the validity and construction of, and the parties' status and rights with respect to, the written settlement agreement the Trust believes was reached pursuant to the parties' communications. The Trust also requested an award of costs and attorney's fees.

TxDOT answered and filed a plea to the jurisdiction asserting sovereign immunity from the Trust's suit. The trial court granted TxDOT's plea to the jurisdiction and this interlocutory appeal followed.[1]

## II.  Standard of Review

We review the trial court's ruling on a plea to the jurisdiction based on immunity from suit under a de novo standard of review.[2]  In reviewing the

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. §  51.014(a)(8) (Vernon 2008).  Halff is not a party to this appeal.

[2] *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *City of Carrollton v. Singer*, 232 S.W.3d 790, 794 (Tex. App.—Fort Worth 2007, pet. denied).

4

denial of a plea to the jurisdiction, we do not review the merits of the case.[3] We construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent.[4] Our focus is not on the plaintiff's claims but on the allegations in the pleadings.[5] Whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction, or whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction, is a question of law.[6]

## III. Analysis

In a single issue, the Trust asserts that the trial court has subject matter jurisdiction over its declaratory judgment action because the parties entered an agreement settling an eminent domain claim for which TxDOT's immunity from suit was waived and, therefore, TxDOT's immunity is likewise waived for the

---

[3] *See State v. Fiesta Mart, Inc.*, 233 S.W.3d 50, 53–54 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Chocolate Bayou Water Co. & Sand Supply v. Tex. Natural Res. Conservation Comm'n*, 124 S.W.3d 844, 849 (Tex. App.—Austin 2003, pet. denied)).

[4] *See Miranda*, 133 S.W.3d at 226; *Singer*, 232 S.W.3d at 795.

[5] *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Werthmann v. City of Fort Worth*, 121 S.W.3d 803, 806 (Tex. App.—Fort Worth 2003, no pet.).

[6] *See Miranda*, 133 S.W.3d at 226; *Singer*, 232 S.W.3d at 794.

Trust's claims for declarations construing the agreement.[7]  Alternatively, the Trust asserts that it raised a fact issue about the existence of an agreement and the trial court could not act on TxDOT's plea to the jurisdiction without first resolving that threshold fact.  TxDOT responds that as a matter of law there is no contract between the Trust and TxDOT, and without a contract settling a claim for which immunity is waived, there is no waiver of immunity for breach of contract.

## A. Applicable Law — No Waiver of Immunity For Mere Negotiations

TxDOT possesses immunity from suit and from liability.[8]  Although a governmental entity like TxDOT waives immunity from liability when it contracts with private citizens, its immunity from suit is not waived solely by its entering into such a contract.[9]  Express legislative consent, in clear and

---

[7] *See Tex. A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 521–22 (Tex. 2002) (plurality op.); *Singer*, 232 S.W.3d at 800.  We note that a party cannot circumvent a sovereign immunity bar by recasting a breach of contract claim as a UDJA claim.  *See Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 856 (Tex. 2002); *Koch v. Tex. Gen. Land Office*, 273 S.W.3d 451, 455 (Tex. App. — Austin 2008, pet. filed).  The Trust, however, does not assert that TxDOT's immunity is waived under the UDJA.

[8] *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997).

[9] *See Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 705 (Tex. 2003); *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001).  Under Chapter 271 of the Local Government Code, however, when a properly executed and authorized contract provides goods or services to a local government, the local government waives sovereign immunity to suit

6

unambiguous language, is required to show that immunity from a breach of contract suit has been waived.[10]

In *Lawson*, a plurality of the Supreme Court of Texas concluded that when a governmental entity settles a claim for which immunity from suit has been waived, immunity from suit is also waived for a breach of the settlement agreement.[11] The plurality reasoned that "when a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued."[12]

Following the *Lawson* plurality's reasoning, this court held in *Singer* that sovereign immunity does not bar a breach of contract claim against a governmental entity where the contract at issue settles an eminent domain claim.[13] In eminent domain actions, a landowner has a constitutional claim for

---

for the purpose of adjudicating a claim for breach of the contract. *See* Tex. Loc. Gov't Code Ann. §§ 271.151-.152 (Vernon 2005); *Singer* at 795 n. 4. Chapter 271 specifically excludes its application to TxDOT, however, and the Trust has not argued that the chapter is applicable. Tex. Loc. Gov't Code Ann. § 271.151(3); Tex. Gov't Code Ann. § 2260.001(4) (Vernon 2008).

[10] *See* Tex. Gov't Code Ann. § 311.034 (Vernon Supp. 2008); *Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 248 (Tex. 2002).

[11] 87 S.W.3d at 521–22.

[12] *Id.* at 521.

[13] *See Singer*, 232 S.W.3d at 800.

7

adequate compensation against the condemnor, and there is no sovereign immunity against such claim.[14] We reasoned in *Singer* that, just as in *Lawson*, a governmental entity cannot claim immunity from a landowner's claim for adequate compensation under article I, section 17 of the Texas Constitution, by contracting to purchase the property for a public purpose before initiating eminent domain proceedings.[15] We recognized that "[a]n agreement to convey property to a governmental authority for a public purpose has the same effect as a formal condemnation proceeding."[16]

Under Texas law, however, mere negotiations for the purchase of property that do not result in the formation of a contract do not afford the owner the right to recover damages from the State, "because there has been neither a taking or any character of a physical invasion of the property."[17] Government action does not give rise to a cause of action under article I, section 17, "in the absence of a current, direct restriction on the property's

---

[14] Tex. Const. art. I, § 17; *Singer*, 232 S.W.3d at 796.

[15] *Singer*, 232 S.W.3d at 796.

[16] *See id.* at 798.

[17] *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992) (quoting *State v. Vaughan*, 319 S.W.2d 349, 354 (Tex. Civ. App.—Austin 1958, no writ) ("[T]he condemnation may be completely abandoned and the property never taken.")).

8

use."[18] Thus, while negotiations are a statutorily-mandated prerequisite to filing a condemnation action, the mere fact that a governmental entity engages in such negotiations does not, without more, trigger a waiver of governmental immunity under article I, section 17.[19] Accordingly, to establish a waiver of immunity for a breach of contract claim predicated on an underlying eminent domain action, a party must establish the existence of an agreement by which a governmental entity contracted to acquire property for a public purpose.[20]

Settlement agreements are governed by the law of contracts.[21] Under Texas law, the requirements of a contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.[22] "[A]n acceptance must

---

[18] *Westgate*, 843 S.W.2d at 452.

[19] *See* Tex. Prop. Code Ann. § 21.012(a), (b)(4) (Vernon Supp. 2008).

[20] The dissent in *Singer* concluded that because the contract at issue was not a settlement agreement, "*Lawson* clearly has no application to the facts of [the] case." *Singer*, 232 S.W.3d at 801 (Cayce, C.J., dissenting).

[21] *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997); *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990).

[22] *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied).

9

be identical with the offer to make a binding contract."[23] If the acceptance modifies the terms of an offer, there is no agreement because the modification constitutes a counteroffer.[24]

## B. No Settlement Agreement—No Waiver of Immunity

Here, TxDOT made an offer to the Trust to purchase all interests in the Property for $293,300. The offer directed the Trust to negotiate with any lessees or interest owners in the Property. The Trust's purported acceptance modified this offer in two respects and, therefore, there was neither a valid acceptance nor a meeting of the minds.[25]

First, although TxDOT offered to purchase the Property without any qualification, the Trust's response stated that the Trust's "acceptance" applied only to "the Trust's interest in the Property alone, exclusive of any other interests in the Property." Second, although the offer explained that TxDOT expected the Trust to negotiate with lessees regarding their interests in the Property, the Trust declined to negotiate with lessees and indicated that TxDOT

---

[23] *Gasmark, Ltd. v. Kimball Energy Corp.*, 868 S.W.2d 925, 928 (Tex. App.—Fort Worth 1994, no writ); *see also MTrust Corp. N.A. v. LJH Corp.*, 837 S.W.2d 250, 254 (Tex. App.—Fort Worth 1992, writ denied).

[24] *Gasmark*, 868 S.W.2d at 928; *MTrust Corp.*, 837 S.W.2d at 254.

[25] *See Gasmark*, 868 S.W.2d at 928; *MTrust Corp.*, 837 S.W.2d at 254.

would have to acquire leasehold interests in the Property on its own. Thus, the response proposed modifications to both the scope of the property to be purchased and the terms by which lessees' interests in the Property would be negotiated.

Because the Trust's response to TxDOT's offer proposed modifications of the scope of the interest that TxDOT sought to acquire and the terms for dealing with lessees, the "acceptance" was actually a counteroffer.[26] The parties never reached any agreement regarding the Trust's counteroffer and, consequently, as a matter of law no contract was formed. Absent a contract settling a claim for which immunity was waived, there was no waiver of TxDOT's immunity against the Trust's declaratory judgment action.[27] The trial court, therefore, did not err in granting TxDOT's plea to the jurisdiction.

---

[26] *See Gasmark*, 868 S.W.2d at 928; *MTrust Corp.*, 837 S.W.2d at 254 (material modification of the terms of an offer constitutes a counteroffer).

[27] *See Singer*, 232 S.W.3d at 798.

11

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's order granting TxDOT's plea to the jurisdiction.

JOHN CAYCE
CHIEF JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

LIVINGSTON, J. filed a concurring opinion.

DELIVERED: July 30, 2009



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-337-CV

ARLO L. SCHRIVER AS TRUSTEE                          APPELLANT
OF THE SCHRIVER FAMILY TRUST

V.

THE TEXAS DEPARTMENT OF                          APPELLEE
TRANSPORTATION

------------

## FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

## CONCURRING OPINION

------------

I concur with the majority's conclusion that as a matter of law, the parties to this case did not enter any contract, and the precedents of the supreme court and our court related to agreements settling immunity-waived claims do not therefore apply. *See Tex. A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 522–23 (Tex. 2002); *City of Carrollton v. Singer*, 232 S.W.3d

790, 799–800 (Tex. App.—Fort Worth 2007, pet. denied).[1] However, I write

separately to expand upon some of the statements made by the majority in

reaching its decision and to opine that if the parties in this case had entered

into a valid contract, TxDOT's immunity would be waived under *Singer*.

The majority states that immunity from suit is not waived solely by a

government entity's entering into a contract with a private citizen. Majority op.

at 6. While that legal principle may be true in some circumstances, it is not

true in others. The majority acknowledges that immunity *can* be waived by

entering a contract where the government is not immune from the claim that

the contract settles. *See Lawson*, 87 S.W.3d at 522–23; *Singer*, 232 S.W.3d

at 799–800. Furthermore, a condition precedent to eminent domain

proceedings—governmental attempts to settle— was occurring at the time of

---

[1] Citing *Lawson*, the Trust has argued that we cannot consider the validity of the parties' contract in making our decision in this case. In *Lawson*, the supreme court stated that it would not consider whether a settlement agreement was void because of the posture of that case, in which no evidence or argument on the validity of the agreement had been offered in the trial court. *Lawson*, 87 S.W.3d at 523. Here, the parties provided evidence in the trial court of their written communications with each other, and they argued about the completion of their contract negotiations. Also, there is an obvious difference between consideration in an interlocutory appeal of whether an undisputedly completed agreement *is void* for reasons unrelated to the agreement's formation, as was the issue in *Lawson*, and whether there is *even an agreement to begin with* that could be subject to *Lawson's* analysis, as is the case here. *See id.*

2

the completed settlement (in *Singer*) and at the time the parties were exchanging conflicting settlement proposals (in this case).[2] *See Singer*, 232 S.W.3d at 797 (describing that "a genuine effort to purchase the land by agreement between the parties, and the failure to do so, is a condition precedent to instituting eminent domain proceedings"); *see also* Tex. Prop. Code Ann. § 21.012(b)(4) (Vernon Supp. 2008) (dictating that a condemnation petition may be filed only after the government's failure to reach an agreement with a landowner).  Thus, I reiterate that had the parties to this suit completed their statutorily required settlement negotiations and properly formed a contract, thus avoiding TxDOT's liability in an eminent domain proceeding for which immunity is waived, TxDOT would have no immunity for a breach of that contract, just as the City of Carrollton had no immunity for a suit claiming a breach of its agreement in *Singer*.

---

[2] Here, Halff Associates, TxDOT's agent in the condemnation process, sent the Trust a letter stating that its property was "required for the construction" of State Highway 121.  Halff Associates described its letter as a "stage of the purchase process" and then referenced eminent domain proceedings.  In a later letter, Halff Associates recognized that it was attempting to acquire a right-of-way "under the threat of condemnation."

Having expressed these concerns about the majority's opinion, I respectfully concur but otherwise join in its opinion and judgment.

TERRIE LIVINGSTON
JUSTICE

DELIVERED:  July 30, 2009

4