

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 2-08-442-CV

VICKI ANN MILNER                                          APPELLANT

V.

JACK EDWARD MILNER                                          APPELLEE

------------

FROM THE 322ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Vicki Ann Milner and Appellee Jack Edward Milner signed a mediated settlement agreement (MSA), and after Vicki unsuccessfully attempted to withdraw her consent to the MSA, the trial court granted their divorce and signed the decree. After the trial court denied her motion for new trial, Vicki timely filed this appeal. In eight issues, she challenges the MSA and the divorce decree and contends that the trial court abused its discretion by refusing to allow her to withdraw

---

[1] *See* Tex. R. App. P. 47.4.

her consent to the MSA and erred by denying her request for additional and amended findings of fact and conclusions of law as well as her motion for new trial. Because we hold that there was no meeting of the minds regarding the contemplated transfer of Jack's "record title and beneficial interest" in a limited partnership to Vicki, we also hold that the MSA was not a binding contract and that the trial court abused its discretion by enforcing the MSA and incorporating it into the divorce decree. We therefore reverse the judgment in part and remand this case to the trial court for a new division of the marital estate.

**Background Facts**

Jack and Vicki were married in 1994. During their marriage, Thelin Recycling Company, L.P. ("Thelin Recycling") and Thelin Management Company, LLC ("Thelin Management") were formed. When the parties separated, the community estate owned a 44.055% interest in Thelin Recycling. The three limited partners of Thelin Recycling were Jack, his brother, Joey Milner, who owned a 20.295% interest, and Michael Hill, who owned a 34.65% interest. Joey sold his interest to Hill before the divorce was granted.

Thelin Management owned a 1% interest in Thelin Recycling and acted as its general partner. At the time of the separation, the community estate owned a 44.5% interest in Thelin Management, Joey owned a 20.5% interest, and Hill owned a 35% interest. Joey sold his interest to Hill before the divorce was granted.

2

Under Thelin Recycling's partnership agreement, generally, a transfer of record title or beneficial ownership of a partnership interest requires the unanimous consent of all the partners, also termed "Required Consent" in the partnership agreement. Section XIII, Paragraph B, Subsection 5 of the partnership agreement further contains specific provisions regarding the transfer of a partnership interest in the event of a divorce, allowing the rights of the partner to share in the profits and losses and to receive distributions, as well as the liabilities for all unsatisfied obligations of the Partner, to pass to the former spouse "unless otherwise provided for herein." The provision also provides:

> In no event shall the . . . former spouse . . . become a Partner of the Partnership, nor be construed as a substituted partner, nor . . . have any voting rights as a Partner or any rights relative to the operations or management of the Partnership, except as provided in this Agreement and the Act.

Section XIII, Paragraph B, Subsection 4 makes clear that no substitute limited partner may be admitted to the partnership without the unanimous consent of the partners. The partnership agreement also makes clear that a mere "assignee" "has only the rights granted under Section 7.02 of the Act" and "does not have the right to become a partner except as provided" in the Partnership Agreement or in Section 7.04 of the Act.[2]

---

[2] *See* Tex. Rev. Civ. Stat. Ann. art. 6132a-1, §§ 7.02, 7.04 (Vernon Supp. 2009) (discussing assignees and limited partners). Since January 1, 2010, limited partnerships are generally governed by chapter 153 of the Business Organizations Code. *See* Tex. Bus. Orgs. Code Ann. §§ 153.003–.553 (Vernon Supp. 2009).

On August 14, 2007, Jack and Vicki separated, and Vicki filed for divorce. On July 3, 2008, they entered into the MSA.

The MSA contains the following section:

**Business Interests:**
Jack agrees to transfer to Vicki all of his beneficial interest and record title in and to the 44.055% community property interest in Thelin Recycling Company, LP, and the 44.5% community property interest in Thelin Management Company, LLC, subject to all liabilities thereon, (except a portion of the mineral interests, as set out herein) and all provisions of the existing Partnership Agreement. The parties acknowledge that Thelin Recycling LP and/or Thelin Management, LLC, have outstanding debt relative to the operation of the business. Vicki agrees to substitute her name, for Jack's name, for all outstanding liabilities on both companies. The parties acknowledge that this agreement is contingent upon the existing lender, or any successor lender, accepting Vicki as a guarantor in place of Jack on all existing liabilities of the Thelin businesses. Jack and Vicki agree to execute the Required Consents to Transfer of Record Title and Beneficial Ownership Interests, copies of which are attached hereto as Exhibit "A", and Exhibit "B", and incorporated herein fully by reference, at the same time this Agreement is executed.

Exhibit A to the MSA provides,

**THELIN RECYCLING COMPANY, LP**
**REQUIRED CONSENT TO TRANSFER OF**
**RECORD TITLE AND BENEFICIAL OWNERSHIP INTERESTS**

Whereas, Jack Milner and Vicki Milner have entered into an agreement for Jack Milner to transfer the record title and beneficial ownership interest in his 44.055% interest in Thelin Recycling Company, LP, to Vicki Milner as a part of the division of the community estate of the parties; and[]

Whereas, THELIN MANAGEMENT COMPANY, LLC, MICHAEL HILL, JACK MILNER, and JOEY MILNER, being all of the partners of THELIN RECYCLING COMPANY, LP, hereby agree to transfer one-

4

half of the mineral interest associated with Jack Milner's 44.055% interest in Thelin Recycling Company, LP, to Jack Milner, individually, and all such partners further agree to execute all documents necessary to award such interest to Jack Milner;

Now, therefore, THELIN MANAGEMENT COMPANY, LLC, MICHAEL HILL, JACK MILNER, and JOEY MILNER, being all of the partners of THELIN RECYCLING COMPANY, LP, and constituting the Required Consent, hereby give their consent to such transfers of interest, effective this 3rd day of July, 2008.

At the bottom of the page are lines for Jack to sign as both President and limited partner, lines for Hill and Joey to sign as limited partners, and a line for Vicki to sign as spouse indicating her "awareness of the agreement as it affects [her] community property rights in Jack Milner's interest in Thelin Recycling Company, LP, and [her] consent to such action." Jack and Vicki both signed where indicated; no one else signed the exhibit that day. Joey signed it on July 7, 2008, eight days before he sold his interest to Hill.

Exhibit B to the MSA provides,

**THELIN MANAGEMENT COMPANY, LLC**
**REQUIRED CONSENT TO TRANSFER OF**
**RECORD TITLE AND BENEFICIAL OWNERSHIP INTERESTS**

Whereas, Jack Milner and Vicki Milner have entered into an agreement for Jack Milner to transfer the record title and beneficial ownership interest in his 44.5% interest in Thelin Management Company, LLC, to Vicki Milner as a part of the division of the community estate of the parties;

Now, therefore, MICHAEL HILL, JACK MILNER, and JOEY MILNER, being all of the members of THELIN MANAGEMENT COMPANY, LLC, and constituting the Required Consent, hereby give

5

their consent to such transfers of interest, effective this 3rd day of July, 2008.

At the bottom of the page are lines for Jack, Hill, and Joey to sign as members and a line for Vicki to sign as spouse indicating her "awareness of the agreement as it affects [her] community property rights in Jack Milner's interest in Thelin Management Company, LLC, and [her] consent to such action." Jack and Vicki both signed where indicated; no one else signed the exhibit that day. Joey signed it on July 7, 2008, eight days before he sold his interest to Hill.

On July 17, 2008, the trial court held a hearing regarding the MSA. Vicki objected that the proposed final decree did not accurately reflect the MSA. Specifically, she objected that Exhibit B to the decree differed from the MSA exhibits. Exhibit B to the decree provides,

**Assignment of Interests**

In accordance with the terms of the Agreed Final Decree of Divorce . . . , I, JACK EDWARD MILNER, TRANSFER, CONVEY, and ASSIGN to VICKI ANN MILNER, the following closely held business interests:

    a.    All of my beneficial interest and record title in and to my 44.055% Limited Partnership Interest in Thelin Recycling Company, LP, subject to all provisions of the Limited Partnership Agreement of Thelin Recycling Company, LP, save and except for the mineral interest to be awarded to me . . . .

    b.    All of my beneficial interest and record title in and to my 44.5% membership interest in Thelin Management

6

> Company, LLC, subject to all provisions of the Regulations of Thelin Management Company, LLC, save and except for the mineral interest to be awarded to me . . . .

The exhibit was to be signed by Jack and notarized. Unlike the exhibits to the MSA, it contains no blanks or references to the other partners of Thelin Recycling or the other members of Thelin Management. The exhibit to the divorce decree also contains no reference to "Required Consent."

Vicki testified that it was her understanding that the MSA was contingent upon all of the partners signing consents to the transaction. Jack testified that he believed that he had performed the required action of transferring his "beneficial interest and record title" in Thelin Recycling and Thelin Management by signing his consent to the transfers.

On August 8, 2008, Vicki filed a notice to withdraw her consent to the MSA. On August 25, Jack filed his Motion to Enter Agreed Final Decree of Divorce.

On August 27, 2008, the trial court signed the final decree of divorce. The final divorce decree transferred Jack's "beneficial interest and record title" in Thelin Recycling and Thelin Management to Vicki. The decree was not contingent on the other partners consenting to a transferred partnership or management interest. Arguing that the final divorce decree did not properly reflect the MSA, Vicki filed a motion for new trial. Vicki alleged that since the signing of the divorce decree, she had learned that before mediation, Hill had purchased Joey's portion of Thelin Management and Thelin Recycling, giving Hill the majority interest in both

companies. However, according to Vicki, Jack never indicated during mediation that Joey's status as a partner in Thelin Recycling and as a member in Thelin Management had changed. Jack's evidence indicated that Vicki's lawyer was aware of the pending purchase before the mediation and that the transaction did not occur until after the mediation. After a hearing, the trial court denied Vicki's motion for new trial on October 10, 2008.

**Analysis**

Section 6.602 of the family code provides in relevant part,

(b) A mediated settlement agreement is binding on the parties if the agreement:

> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

> (2) is signed by each party to the agreement; and

> (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

(c) If a mediated settlement agreement meets the requirements of this section, a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.[3]

---

[3] ⬆ Tex. Fam. Code Ann. § 6.602(b), (c) (Vernon 2006).

As Vicki concedes, the MSA meets the requirements of this section.[4] But settlement agreements are governed by contract law.[5] This court has held that a trial court may properly refuse to enforce an MSA that otherwise complies with the statute if a party procures the agreement by intentionally failing to disclose material information,[6] and other courts have held that a trial court need not enforce an MSA that is illegal or that was obtained through fraud, duress, coercion or other dishonest methods.[7] Additionally, the Dallas Court of Appeals has appeared to recognize that the absence of a meeting of the minds would justify a trial court's rejection of an MSA,[8] which is logical, given that a meeting of the minds is a required element of a valid contract.[9]

---

[4] *See id.*

[5] *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997); *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990); *Schriver v. Tex. Dep't of Transp.*, 293 S.W.3d 846, 851 (Tex. App.—Fort Worth 2009, no pet.).

[6] *Boyd v. Boyd*, 67 S.W.3d 398, 403, 405 (Tex. App.—Fort Worth 2002, no pet.).

[7] *See In re Joyner*, 196 S.W.3d 883, 890 (Tex. App.—Texarkana 2006, pet. denied); *In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) (op. on reh'g).

[8] *See Mullins v. Mullins*, 202 S.W.3d 869, 877 (Tex. App.—Dallas 2006, pet. denied).

[9] *See Schriver*, 293 S.W.3d at 851; *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied).

In her second issue, Vicki contends that the trial court abused its discretion by not setting aside the MSA and rendering judgment based upon contingencies that were not performable. She specifically contends within this issue that there was no meeting of the minds. We agree.

In the MSA, Jack and Vicki agreed to "execute the Required Consents to Transfer of Record Title and Beneficial Ownership Interests, copies of which are attached hereto as Exhibit 'A', and Exhibit 'B', and incorporated herein fully by reference." Each exhibit contains "Required Consent" in its title and contains blanks for not only Jack and Vicki but also for Joey and Hill. "[O]ur duty is to give effect to all contract provisions, and render none meaningless."[10] In contrast to the MSA and its associated exhibits, the divorce decree and Exhibit B thereto omit any discussion of "Required Consent," Joey, and Hill.

Under the partnership agreement, the consents of Joey and Hill were not required for Jack to merely assign his interest to Vicki, but unanimous consent, termed "Required Consent" in the partnership agreement, was required for her to be a limited partner.

Because the MSA contemplated unanimous consent and therefore a limited partnership interest for Vicki, but the divorce decree contemplated only an assignment, and because the rights of a limited partner are greater than those of an

---

[10] *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 193 (Tex. 2002).

assignee under the partnership agreement, we hold that there was no meeting of the minds regarding the transfer of the partnership interest. Consequently, we hold that the trial court abused its discretion by not setting aside the MSA. We sustain Vicki's second issue, and because of this disposition, we do not reach her remaining issues.[11]

Having sustained Vicki's second issue, we affirm that portion of the trial court's judgment granting the divorce but reverse the trial court's judgment as to the property division. We remand this case to the trial court for a new division of the marital estate.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

GARDNER, J. filed a concurring opinion.

WALKER, J. concurs without opinion.

DELIVERED: June 3, 2010

---

[11] *See* Tex. R. App. P. 47.1.



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 2-08-442-CV

VICKI ANN MILNER                                                                    APPELLANT

V.

JACK EDWARD MILNER                                                          APPELLEE

------------

FROM THE 322ND DISTRICT COURT OF TARRANT COUNTY

------------

## CONCURRING MEMORANDUM OPINION[1]

------------

I join in the result but on additional grounds expressly raised by Vicki's issues in her brief. I would sustain Vicki's first issue, complaining that the divorce decree does not conform to the mediated settlement agreement (MSA), because the Exhibit B attached to and incorporated into the decree, as well as the language of the decree, substantially differs from the Exhibits A and B attached to and made a part of the MSA. *See In re Joyner,* 196 S.W.3d 883, 890–91 (Tex. App.—Texarkana

---

[1] *See* Tex. R. App. P. 47.4.

2006, pet. denied) (noting that section 6.602 does not authorize the trial court to substitute its judgment for a mediated settlement agreement).

I would also sustain Vicki's second issue contending that the MSA contained contingencies that were impossible to perform. When it is impossible to enforce the terms of a mediated settlement agreement, a trial court may not add terms, significantly alter terms, or undermine the intent of the parties in an effort to remedy the problem. *See, e.g., Beyers v. Roberts*, 199 S.W.3d 354, 362 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *In re Nolder*, 48 S.W.3d 432, 434–35 (Tex. App.—Texarkana 2001, no pet.); *In re Ames*, 860 S.W.2d 590, 592–93 (Tex. App.—Amarillo 1993, no writ) (reversing decree that added significant and different terms to MSA).

Here, the record reflects the impossibility of ever obtaining the required consents as stated by the MSA and the Exhibits A and B attached thereto, and I would hold that the trial court abused its discretion by attempting to modify the agreement because there was no final, binding agreement between the parties. *See Pickell v. Guar. Nat'l Life Ins. Co.*, 917 S.W.2d 439, 441–42 (Tex. App.—Houston [14th Dist.] 1996, no writ) (holding where record reflected that contingency contained in MSA was not met, there was no final, binding agreement on which judgment could be based).

2

ANNE GARDNER
JUSTICE


DELIVERED:  June 3, 2010