[CB1] 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-08-442-CV

 

 

VICKI ANN MILNER                                                                           APPELLANT

 

                                                             V.

 

JACK EDWARD MILNER                                                                      APPELLEE

 

                                                       ------------

 

              FROM
THE 322ND DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------








Appellant
Vicki Ann Milner and Appellee Jack Edward Milner signed a mediated settlement
agreement (MSA), and after Vicki unsuccessfully
attempted to withdraw her consent to the MSA, the
trial court granted their divorce and signed the decree.  After the trial court denied her motion for
new trial, Vicki timely filed this appeal. 
In eight issues, she challenges the MSA and
the divorce decree and contends that the trial court abused its discretion by
refusing to allow her to withdraw her consent to the MSA
and erred by denying her request for additional and amended findings of fact
and conclusions of law as well as her motion for new trial.  Because we hold that there was no meeting of
the minds regarding the contemplated transfer of Jack=s Arecord
title and beneficial interest@ in
a limited partnership to Vicki, we also hold that the MSA
was not a binding contract and that the trial court abused its discretion by
enforcing the MSA and incorporating it into the
divorce decree.  We therefore reverse the
judgment in part and remand this case to the trial court for a new division of
the marital estate.

Background Facts

Jack
and Vicki were married in 1994.  During
their marriage, Thelin Recycling Company, L.P. (AThelin
Recycling@)
and Thelin Management Company, LLC (AThelin
Management@)
were formed.  When the parties separated,
the community estate owned a 44.055% interest in Thelin
Recycling.  The three limited partners of
Thelin Recycling were Jack, his brother, Joey Milner,
who owned a 20.295% interest, and Michael Hill, who owned a 34.65%
interest.  Joey sold his interest to Hill
before the divorce was granted.

Thelin
Management owned a 1% interest in Thelin Recycling
and acted as its general partner.  At the
time of the separation, the community estate owned a 44.5% interest in Thelin Management, Joey owned a 20.5% interest, and Hill
owned a 35% interest.  Joey sold his
interest to Hill before the divorce was granted.








Under
Thelin Recycling=s
partnership agreement, generally, a transfer of record title or beneficial
ownership of a partnership interest requires the unanimous consent of all the
partners, also termed ARequired Consent@ in
the partnership agreement.  Section XIII,
Paragraph B, Subsection 5 of the partnership agreement further contains
specific provisions regarding the transfer of a partnership interest in the
event of a divorce, allowing the rights of the partner to share in the profits
and losses and to receive distributions, as well as the liabilities for all
unsatisfied obligations of the Partner, to pass to the former spouse Aunless
otherwise provided for herein.@  The provision also provides:

In
no event shall the . . . former spouse . . . become a Partner of the
Partnership, nor be construed as a substituted partner, nor . . . have any
voting rights as a Partner or any rights relative to the operations or
management of the Partnership, except as provided in this Agreement and the
Act.

 

Section XIII, Paragraph B,
Subsection 4 makes clear that no substitute limited partner may be admitted to
the partnership without the unanimous consent of the partners.  The partnership agreement also makes clear
that a mere Aassignee@ Ahas
only the rights granted under Section 7.02 of the Act@ and
Adoes
not have the right to become a partner except as provided@ in
the Partnership Agreement or in Section 7.04 of the Act.[2]

On
August 14, 2007, Jack and Vicki separated, and Vicki filed for divorce.  On July 3, 2008, they entered into the MSA.

The MSA contains the following section:

Business
Interests:

Jack
agrees to transfer to Vicki all of his beneficial interest and record title in
and to the 44.055% community property interest in Thelin
Recycling Company, LP, and the 44.5% community property interest in Thelin Management Company, LLC, subject to all liabilities
thereon, (except a portion of the mineral interests, as set out herein) and all
provisions of the existing Partnership Agreement.  The parties acknowledge that Thelin Recycling LP and/or Thelin
Management, LLC, have outstanding debt relative to the operation of the
business.  Vicki agrees to substitute her
name, for Jack=s name, for all
outstanding liabilities on both companies. 
The parties acknowledge that this agreement is contingent upon the
existing lender, or any successor lender, accepting Vicki as a guarantor in
place of Jack on all existing liabilities of the Thelin
businesses.  Jack and Vicki agree to
execute the Required Consents to Transfer of Record Title and Beneficial
Ownership Interests, copies of which are attached hereto as Exhibit AA@, and Exhibit AB@, and incorporated
herein fully by reference, at the same time this Agreement is executed.

 

Exhibit
A to the MSA provides,

                                  THELIN RECYCLING COMPANY, LP

                              REQUIRED
CONSENT TO TRANSFER OF

               RECORD
TITLE AND BENEFICIAL OWNERSHIP INTERESTS

 

Whereas, Jack Milner and Vicki Milner have
entered into an agreement for Jack Milner to transfer the record title and
beneficial ownership interest in his 44.055% interest in Thelin
Recycling Company, LP, to Vicki Milner as a part of the division of the
community estate of the parties; and[]

 








Whereas, THELIN
MANAGEMENT COMPANY, LLC, MICHAEL HILL, JACK MILNER, and JOEY MILNER, being all
of the partners of THELIN RECYCLING COMPANY, LP,
hereby agree to transfer one-half of the mineral interest associated with Jack
Milner=s 44.055% interest in
Thelin Recycling Company, LP, to Jack Milner,
individually, and all such partners further agree to execute all documents
necessary to award such interest to Jack Milner;

 

Now, therefore, THELIN
MANAGEMENT COMPANY, LLC, MICHAEL HILL, JACK MILNER, and JOEY MILNER, being all
of the partners of THELIN RECYCLING COMPANY, LP, and
constituting the Required Consent, hereby give their consent to such transfers
of interest, effective this 3rd day of July, 2008.

 

At the bottom of the page
are lines for Jack to sign as both President and limited partner, lines for
Hill and Joey to sign as limited partners, and a line for Vicki to sign as
spouse indicating her Aawareness of the agreement
as it affects [her] community property rights in Jack Milner=s
interest in Thelin Recycling Company, LP, and [her]
consent to such action.@  Jack and Vicki both signed where indicated;
no one else signed the exhibit that day. 
Joey signed it on July 7, 2008, eight days before he sold his interest
to Hill.

Exhibit
B to the MSA provides,

                              THELIN MANAGEMENT COMPANY, LLC

                              REQUIRED
CONSENT TO TRANSFER OF

               RECORD
TITLE AND BENEFICIAL OWNERSHIP INTERESTS

 

Whereas, Jack Milner and Vicki Milner have
entered into an agreement for Jack Milner to transfer the record title and
beneficial ownership interest in his 44.5% interest in Thelin
Management Company, LLC, to Vicki Milner as a part of the division of the
community estate of the parties;

 








Now, therefore, MICHAEL HILL, JACK MILNER,
and JOEY MILNER, being all of the members of THELIN
MANAGEMENT COMPANY, LLC, and constituting the Required Consent, hereby give
their consent to such transfers of interest, effective this 3rd day of July,
2008. 

 

At the bottom of the page
are lines for Jack, Hill, and Joey to sign as members and a line for Vicki to
sign as spouse indicating her Aawareness
of the agreement as it affects [her] community property rights in Jack Milner=s
interest in Thelin Management Company, LLC, and [her]
consent to such action.@  Jack and Vicki both signed where indicated;
no one else signed the exhibit that day. 
Joey signed it on July 7, 2008, eight days before he sold his interest
to Hill.

On
July 17, 2008, the trial court held a hearing regarding the MSA.  Vicki objected that the proposed final decree
did not accurately reflect the MSA.  Specifically, she objected that Exhibit B to
the decree differed from the MSA exhibits.  Exhibit B to the decree provides, 

Assignment of Interests

In accordance with the terms of the Agreed
Final Decree of Divorce . . . , I, JACK
EDWARD MILNER, TRANSFER, CONVEY, and ASSIGN to VICKI ANN MILNER, the following
closely held business interests:

 

a.       All of my beneficial interest and record
title in and to my 44.055% Limited Partnership Interest in Thelin
Recycling Company, LP, subject to all provisions of the Limited Partnership
Agreement of Thelin Recycling Company, LP, save and
except for the mineral interest to be awarded to me . . . .

 








b.       All of my beneficial interest and record
title in and to my 44.5% membership interest in Thelin
Management Company, LLC, subject to all provisions of the Regulations of Thelin Management Company, LLC, save and except for the
mineral interest to be awarded to me . . . . 

 

The
exhibit was to be signed by Jack and notarized. 
Unlike the exhibits to the MSA, it contains no
blanks or references to the other partners of Thelin
Recycling or the other members of Thelin
Management.  The exhibit to the divorce
decree also contains no reference to ARequired
Consent.@

Vicki
testified that it was her understanding that the MSA
was contingent upon all of the partners signing consents to the
transaction.  Jack testified that he
believed that he had performed the required action of transferring his Abeneficial
interest and record title@ in Thelin
Recycling and Thelin Management by signing his
consent to the transfers.

On August
8, 2008, Vicki filed a notice to withdraw her consent to the MSA.  On August 25,
Jack filed his Motion to Enter Agreed Final Decree of Divorce. 








On
August 27, 2008, the trial court signed the final decree of divorce. The final
divorce decree transferred Jack=s Abeneficial
interest and record title@ in Thelin
Recycling and Thelin Management to Vicki.  The decree was not contingent on the other
partners consenting to a transferred partnership or management interest.  Arguing that the final divorce decree did not
properly reflect the MSA, Vicki filed a motion for
new trial.  Vicki alleged that since the
signing of the divorce decree, she had learned that before mediation, Hill had
purchased Joey=s
portion of Thelin Management and Thelin
Recycling, giving Hill the majority interest in both companies.  However, according to Vicki, Jack never indicated
during mediation that Joey=s
status as a partner in Thelin Recycling and as a
member in Thelin Management had changed.  Jack=s
evidence indicated that Vicki=s
lawyer was aware of the pending purchase before the mediation and that the
transaction did not occur until after the mediation.  After a hearing, the trial court denied Vicki=s
motion for new trial on October 10, 2008.

Analysis

Section
6.602 of the family code provides in relevant part,

(b) A mediated
settlement agreement is binding on the parties if the agreement:  

 

(1)
provides, in a prominently displayed statement that is in boldfaced type or
capital letters or underlined, that the agreement is not subject to revocation;


 

(2)
is signed by each party to the agreement; and 

 

(3)
is signed by the party=s attorney, if any,
who is present at the time the agreement is signed. 

 

(c)
If a mediated settlement agreement meets the requirements of this section, a
party is entitled to judgment on the mediated settlement agreement notwithstanding
Rule 11, Texas Rules of Civil Procedure, or another rule of law.[3]

 

As
Vicki concedes, the MSA meets the requirements of
this section.[4]  But settlement agreements are governed by
contract law.[5]  This court has held that a trial court may
properly refuse to enforce an MSA that otherwise
complies with the statute if a party procures the agreement by intentionally
failing to disclose material information,[6]
and other courts have held that a trial court need not enforce an MSA that is illegal or that was obtained through fraud,
duress, coercion or other dishonest methods.[7]  Additionally, the Dallas Court of Appeals has
appeared to recognize that the absence of a meeting of the minds would justify
a trial court=s
rejection of an MSA,[8]
which is logical, given that a meeting of the minds is a required element of a
valid contract.[9]  








In
her second issue, Vicki contends that the trial court abused its discretion by
not setting aside the MSA and rendering judgment
based upon contingencies that were not performable.  She specifically contends within this issue
that there was no meeting of the minds. 
We agree.  

In
the MSA, Jack and Vicki agreed to Aexecute
the Required Consents to Transfer of Record Title and Beneficial Ownership
Interests, copies of which are attached hereto as Exhibit >A=,
and Exhibit >B=,
and incorporated herein fully by reference.@  Each exhibit contains ARequired
Consent@ in
its title and contains blanks for not only Jack and Vicki but also for Joey and
Hill.  A[O]ur duty is to give effect to all
contract provisions, and render none meaningless.@[10]  In contrast to the MSA
and its associated exhibits, the divorce decree and Exhibit B thereto omit any
discussion of ARequired
Consent,@
Joey, and Hill.

Under
the partnership agreement, the consents of Joey and Hill were not required for
Jack to merely assign his interest to Vicki, but unanimous consent, termed ARequired
Consent@ in
the partnership agreement, was required for her to be a limited partner.

Because
the MSA contemplated unanimous consent and therefore
a limited partnership interest for Vicki, but the divorce decree contemplated
only an assignment, and because the rights of a limited partner are greater
than those of an assignee under the partnership agreement, we hold that there
was no meeting of the minds regarding the transfer of the partnership
interest.  Consequently, we hold that the
trial court abused its discretion by not setting aside the MSA.  We sustain Vicki=s
second issue, and because of this disposition, we do not reach her remaining
issues.[11]

Having
sustained Vicki=s second issue, we affirm
that portion of the trial court=s
judgment granting the divorce but reverse the trial court=s
judgment as to the property division.  We
remand this case to the trial court for a new division of the marital estate.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

GARDNER, J. filed a
concurring opinion.

WALKER, J. concurs without
opinion.

DELIVERED:  June 3, 2010


 
 
 
 
 
 
 
 
 
  

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-08-442-CV

 

 

VICKI ANN MILNER                                                                           APPELLANT

 

                                                             V.

 

JACK EDWARD MILNER                                                                      APPELLEE

 

                                                       ------------

 

              FROM
THE 322ND DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                        CONCURRING MEMORANDUM
OPINION[1]

 

                                                       ------------








I
join in the result but on additional grounds expressly raised by Vicki=s
issues in her brief.  I would sustain
Vicki=s
first issue, complaining that the divorce decree does
not conform to the mediated settlement agreement (MSA),
because the Exhibit B attached to and incorporated into the decree, as well as
the language of the decree, substantially differs from the Exhibits A and B
attached to and made a part of the MSA.  See In re Joyner, 196 S.W.3d 883, 890B91
(Tex. App.CTexarkana
2006, pet. denied) (noting that section 6.602 does not authorize the trial
court to substitute its judgment for a mediated settlement agreement).

I
would also sustain Vicki=s second issue contending
that the MSA contained contingencies that were
impossible to perform.  When it is
impossible to enforce the terms of a mediated settlement agreement, a trial
court may not add terms, significantly alter terms, or undermine the intent of
the parties in an effort to remedy the problem.  See, e.g., Beyers v.
Roberts, 199 S.W.3d 354, 362 (Tex. App.CHouston [1st Dist.] 2006,
pet. denied); In re Nolder, 48 S.W.3d 432, 434B35
(Tex. App.CTexarkana
2001, no pet.); In re Ames, 860 S.W.2d 590,
592B93
(Tex. App.CAmarillo
1993, no writ) (reversing decree that added significant and different terms to MSA).

Here,
the record reflects the impossibility of ever obtaining the required consents
as stated by the MSA and the Exhibits A and B
attached thereto, and 
I would hold that the trial court abused its discretion by
attempting to modify the agreement because there was no final, binding agreement
between the parties.  See Pickell v. Guar. Nat=l
Life Ins. Co., 917 S.W.2d 439,
441B42
(Tex. App.CHouston
[14th Dist.] 1996, no writ) (holding where record reflected that contingency
contained in MSA was not met, there was no final,
binding agreement on which judgment could be based).

 








ANNE GARDNER

JUSTICE

 

DELIVERED:  June 3, 2010











[1]See Tex. R. App. P.
47.4.





[2]See Tex. Rev. Civ. Stat.
Ann. art.
6132a‑1, '' 7.02, 7.04 (Vernon Supp. 2009)
(discussing assignees and limited partners).  Since January 1, 2010, limited partnerships
are generally governed by chapter 153 of the Business Organizations Code. See
Tex. Bus. Orgs. Code Ann. '' 153.003B.553 (Vernon Supp.
2009).





[3]Tex.
Fam. Code Ann. ' 6.602(b), (c)
(Vernon 2006).





[4]See id.





[5]Schlumberger Tech.
Corp. v. Swanson,
959 S.W.2d 171, 178 (Tex. 1997); Williams v. Glash, 789 S.W.2d 261, 264
(Tex. 1990); Schriver v. Tex. Dep=t of Transp., 293 S.W.3d 846, 851 (Tex. App.CFort Worth 2009, no
pet.).





[6]Boyd v. Boyd, 67 S.W.3d 398, 403, 405 (Tex. App.CFort Worth 2002, no
pet.).





[7]See In re Joyner, 196 S.W.3d 883, 890 (Tex. App.CTexarkana 2006, pet.
denied); In re Kasschau, 11 S.W.3d 305, 312 (Tex. App.CHouston [14th Dist.]
1999, orig. proceeding) (op. on reh=g).





[8]See Mullins v.
Mullins,
202 S.W.3d 869, 877 (Tex. App.CDallas 2006, pet.
denied).





[9]See Schriver, 293 S.W.3d at
851; Hubbard v. Shankle, 138 S.W.3d 474, 481 (Tex. App.CFort Worth 2004, pet.
denied).





[10]King
v. Dallas Fire Ins. Co., 85 S.W.3d 185, 193 (Tex.
2002).





[11]See Tex. R. App. P.
47.1.





[1]See Tex. R. App. P.
47.4.















 [CB1]Majority
by Dauphinot; Gardner concurs with opinion