**Opinion filed April 25, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00042-CV

_____

## BRENDA CORBIN STIRL AND RALPH E. STIRL, Appellants

## V.

## TERRY McGHEE, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 24619-B**

## M E M O R A N D U M   O P I N I O N

This appeal stems from the trial court's determination that the parties had not entered into a settlement agreement as to the claims in the underlying suit. Terry McGhee was injured in an automobile collision and subsequently brought suit against Brenda Corbin Stirl and Ralph E. Stirl. While the suit was pending in the trial court, the Stirls filed a counterclaim alleging that the parties had entered into a valid and enforceable settlement agreement; the Stirls sought enforcement of that agreement. The trial court severed the counterclaim from the underlying suit, conducted a bench trial on the counterclaim, and held that no binding settlement agreement existed. The Stirls appeal. We affirm.

*Issues/Points*

The Stirls present four "issues" in their original brief and three "points" in a supplemental brief that was filed after the abatement of this appeal. In their first issue, the Stirls complain of the trial court's failure to enter findings of fact and conclusions of law. That failure was remedied by the trial court upon abatement of this appeal; thus, the first issue is overruled as moot. In their second issue, the Stirls contend that the evidence established as a matter of law that the parties had entered into a binding, enforceable settlement agreement. In the third issue, the Stirls argue that the trial court's finding that no settlement agreement existed is against the great weight and preponderance of the evidence. The Stirls complain in their fourth issue of the admission of parol evidence to alter, vary, or contradict the agreement. In their first point, the Stirls assert that the trial court erred in concluding that McGhee did not accept the offer. In the second and third points, the Stirls challenge the legal and factual sufficiency of the evidence to support the trial court's findings that McGhee's letter did not constitute an acceptance and that McGhee did not understand the settlement offer.

*Standards of Review*

We review sufficiency challenges to a trial court's findings of fact under the same standards that we use to review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). In analyzing a legal sufficiency challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must review the evidence in the light most favorable to the challenged finding, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22, 827. We may sustain a no-evidence or legal sufficiency challenge only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. In analyzing a factual sufficiency challenge, we must consider and weigh all of the evidence and determine whether the evidence in support of a finding is so weak as to be clearly wrong and unjust or whether the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow*

*Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We review a trial court's conclusions of law, including those mislabeled as findings of fact, de novo. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

Written settlement agreements may be enforced as contracts even if one party withdraws consent. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009). To be enforceable though, a settlement agreement must comply with TEX. R. CIV. P. 11. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). Rule 11 provides that no agreement between attorneys or parties in a pending lawsuit will be enforced unless it is in writing and is signed and filed with the papers as part of the record or unless it is made in open court and entered of record. The agreement need not be contained in one document. *Id.* However, together, the writings must be complete in every material detail and must contain all of the essential elements of the agreement so that the agreement can be ascertained from the writings without resorting to oral testimony. *Id.* Settlement agreements are therefore governed by the law of contracts. *Schriver v. Tex. Dep't of Transp.*, 293 S.W.3d 846, 851 (Tex. App.—Fort Worth 2009, no pet.).

Under Texas law, the requirements of a contract are (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied). A meeting of the minds is necessary to form a binding contract. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). Whether the parties have come to a "meeting of the minds," and therefore an acceptance of the offer, is measured objectively according to what the parties said and did, not on a party's subjective state of mind. *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied). If contested, the "meeting of the minds" element is a question for the factfinder. *Hallmark v. Hand*, 885 S.W.2d 471, 476–77 (Tex. App.—El Paso 1994, writ denied). But whether an agreement is legally enforceable is a question of law. *Ronin v. Lerner*, 7 S.W.3d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

*Relevant Documents*

The Stirls contend that the following documents together constitute a valid settlement agreement: a letter dated December 22, 2006, to McGhee from Russell Manion, a claims adjuster for Texas Farm Bureau Insurance Companies, the Stirls' insurance carrier; a letter dated

3

February 21, 2008, from McGhee to Manion; a letter dated February 26, 2008, from the Stirls' attorney to the law firm that had been representing McGhee; and a letter dated February 28, 2008, from McGhee to Manion. These documents were admitted as exhibits at trial. Because the content of the documents is essential to the issues in this case, we quote the relevant portions of the documents below.

The December 22, 2006 letter from Manion to McGhee reads in pertinent part:

RE:    Claim Number:     648793-08
       Our Insured:       Ralph and Brenda Stirl
       D/Loss:           12/12/2006

Dear Mr. McGhee:

This letter is to advise you that we have accepted liability for the above referenced accident.

. . . .

Our investigation into this accident have [sic] determined that the injuries you have suffered are severe in nature. At this time I would like to extend an offer of $50,000.00, the policy limits on Policy 21350343.

At the time we resolve this matter you would be required to sign a release. Once the release is properly executed I would forward a check to your attention. By law, we will be required to honor any liens by a health carrier or health provider.

In the event you have any questions or wish to discuss this matter please feel free to contact my office.

Several months later, on July 12, 2007, and without having accepted the offer made by Manion in the December 22 letter, McGhee filed suit against the Stirls. McGhee had retained the Hanna Law Firm to represent him in this matter and signed a power of attorney and fee contract with the firm on January 3, 2007.

The record shows that a hospital lien in the amount of $44,220.52 was filed in the county clerk's office on April 23, 2007.[1] From March 15, 2007, to November 19, 2007, McGhee obtained several advances from the Hanna Law Firm; these advances totaled $41,500. On February 20, 2008, the Hanna Law Firm refused McGhee's request to advance him more money, and McGhee wrote in a letter to the firm: "After meeting with you today, I have decided to fire you as my attorney." On February 21, 2008, McGhee, who was in a dire financial situation and

---

[1]We note that a supplemental hospital lien was filed on September 15, 2008, well after the alleged settlement agreement. This lien indicated that the total amount owed by McGhee to the hospital had risen to $75,948.04.

4

needed money to keep his house and vehicles from being repossessed, sent a letter to Manion referencing the insurance claim number; the body of the letter reads in full as follows:

> I am faxing you a copy of the letter I sent my attorney firing him. I no longer have legal representation, and I am eager to settle this claim for the amount that you previously offered me of $50,000.00. I would like to close this matter as soon as possible so please get in touch with me. You can reach me at [phone numbers]. Thank you.

Because a lawsuit involving the claim had been filed, Manion forwarded McGhee's letters to the Stirls' attorney.

Soon thereafter, the Stirls' attorney sent a letter dated February 26, 2008, to the Hanna Law Firm, with a copy to McGhee, which reads as follows:

> You will recall our phone discussion of Friday, February 22, 2008, wherein I informed you Terry McGhee had left a voicemail for Russell Manion informing us he was no longer represented by counsel. As a courtesy, I contacted you rather than Mr. McGhee to confirm the situation. It was my understanding you were still representing Mr. McGhee; however, we have now received written notice that Mr. McGhee has terminated his attorney/client relationship with you and has accepted our continuing offer of Fifty Thousand Dollars ($50,000.00) to settle this case. I am enclosing copies herein of letters dated February 20 and 21 regarding same.
>
> This being the case, I have no choice but to contact Mr. McGhee and work out the closing details of the settlement including addressing all liens. In that regard, please advise as to whether you are asserting a lien for attorney's fees and expenses.
>
> By copy of this correspondence to Mr. McGhee, I am acknowledging his acceptance of our Fifty Thousand Dollar ($50,000.00) policy limit offer on behalf of insureds, Mr. and Mrs. Stirl, as full and final settlement of all claims. I am further informing Mr. McGhee settlement checks will be issued upon confirmation of amounts due to lien holders for healthcare including agreement he may reach with providers for reduction of lien amounts. Regardless, we consider the claim settled in light of Mr. McGhee's written acceptance of offer.

Two days later, on February 28, McGhee again wrote a letter to Manion. In that letter, McGhee stated:

> I previous[ly] faxed you a letter dated February 21, 2008 that stated that I was eager to settle this claim for the previous offer of $50,000.00. After considering the fact that I won't receive any monetary compensation when the liens that have been filed against me are paid, I am withdrawing my acceptance of the above stated amount. I will continue with legal means through the lawsuit.

The record shows that the Hanna Law Firm continued to represent McGhee.

*Trial Court's Findings and Conclusions*

The trial court found that, in his February 21 letter to Manion, "McGhee was communicating his desire to discuss the matter further." McGhee indicated that he was eager to accept the monetary portion of Manion's previous offer, but McGhee did not mention either the hospital lien portion of the offer or the release portion of the offer. The trial court also found that "McGhee did not understand the hospital lien portion of Farm Bureau's December 22, 2006, settlement offer." The trial court concluded that McGhee did not accept Farm Bureau's settlement offer and that the parties did not reach a settlement agreement.

*Analysis*

Based upon the letters that were filed of record in the trial court, we cannot hold that, as a matter of law, a contract or settlement agreement existed. First, the alleged agreement was not complete in every material detail and did not contain all of the essential elements. *See Padilla*, 907 S.W.2d at 460. Rather, the letters contemplated further negotiations to work out the details of a settlement. McGhee did not agree to release the Stirls from liability or to dismiss his lawsuit. The substance of the letters does not reveal that there was an offer, an acceptance in strict compliance with the terms of the offer, a meeting of the minds, consent by each party to the terms, and execution and delivery of the contract with the intent that it be mutual and binding. Thus, the requirements for the formation of a contract were not satisfied. Second, the evidence did not conclusively establish that a meeting of the minds occurred. That issue was contested and was settled, as an issue of fact, by the trial court in favor of McGhee. The trial court found that McGhee did not understand a portion of Manion's offer. That finding is supported objectively by McGhee's actions and his circumstances at the time. The evidence in support of the finding is not so weak as to be clearly wrong and unjust, nor is the finding so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Accordingly, we overrule the Stirls' second and third issues from their original brief and all three points from their supplemental brief.

*Parol Evidence*

In their fourth issue, the Stirls contend that the trial court erred in admitting parol evidence to alter, vary, or contradict the terms of the agreement. The parol evidence rule is a rule of substantive law which provides that, in the absence of fraud, accident, or mistake, extrinsic evidence is not admissible to vary, add to, or contradict the terms of a written contract

6

that is facially complete and unambiguous. *Gail v. Berry*, 343 S.W.3d 520, 523 (Tex. App.—Eastland 2011, pet. denied). When the following question was asked of Manion, the Stirls objected based upon the parol evidence rule: "Would you agree with me that nowhere in that letter does it say, Terry, we're going to give you $50,000 and then we're going to pay the lien? It doesn't say that, does it?" Manion was not being asked a question involving parol evidence but, rather, was being asked about the contents of the letter. Manion's testimony in no way altered, varied, or contradicted the terms of any of the letters. Thus, the parol evidence rule was not violated. We overrule the Stirls' fourth issue from their original brief.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


April 25, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.