**Reverse in part, Affirm in part, and Remand; Opinion Filed January 3, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-10-01375-CV

## IN THE INTEREST OF C.H.C. AND S.M.C., CHILDREN

On Appeal from the 380th District Court
Collin County, Texas
Trial Court Cause No. 380-54606-03

## OPINION

Before Justices Moseley, Fillmore, and Myers
Opinion By Justice Myers

Jennifer C. (Mother) appeals the trial court's judgment on David C.'s (Father) motion to modify the order on the suit affecting parent-child relationship. The parties entered into a mediated settlement agreement on some of their disputes, and they agreed to leave the remaining controversies to the trial court's determination. Mother brings eight issues contending (a) the trial court lacked jurisdiction over the proceedings and its orders are void; (b) there was insufficient evidence of changed circumstances to support modifying the existing order; (c) the mediated settlement agreement was invalid as a contract; (d) the final judgment deviated from the mediated settlement agreement; and (e) there was no evidence to support the order that Mother pay child support of $1,333.22 per month. We reverse the trial court's judgment as to the child-support order and remand for determination of the amount of child support, if any, to be paid, and we otherwise affirm the trial

court's judgment.

## BACKGROUND

Mother and Father are the parents of twin girls, C.H.C. and S.M.C, born in 2000. The parties divorced in 2004. The divorce decree, signed by Judge Charles Sandoval, named the parties joint managing conservators with Father paying child support of $500 per month. Under the decree, the parents had nearly equal possession of the children. The decree required the parents to reside in Dallas or Collin County. The decree also ordered each parent to pay one-half of the children's school tuition for the 2004 school year and that $75,000 from an investment account owned by Father be used to establish a fund for the children's educational expenses.

On December 1, 2006, Judge Sandoval modified the conservatorship, possession, and support of the children. The 2006 order appointed Mother sole managing conservator and Father possessory conservator of the children, and the order reduced Father's possession of the children. The 2006 order gave Mother the right to designate the children's primary residence with no geographical restriction. The court ordered that Mother have the exclusive right to make decisions concerning the children's education. The modification order required Father to pay $30,000 each year into an account for the children's educational expenses with Mother having complete control over the account. The court increased Father's child support to $2000 per month, and the court required Father to pay Mother $27,000 for additional child support accumulated while the motion to modify was pending. The court also required Father to pay Mother's attorney's fees of $416,543.16.

On January 29, 2009, Father filed a motion to modify the parent-child relationship, which is the litigation before us on this appeal. On Mother's motion, the presiding judge recused herself from the case and requested that another judge be assigned to hear the case. On March 9, 2009, the presiding regional administrative judge, the Honorable John Ovard, assigned the Honorable John L.

McCraw Jr. to the case. Judge McCraw presided over the case through the rendition of the order on appeal.

On February 8, 2010, the parties signed a mediated settlement agreement resolving many of their issues and agreeing that the trial court could determine the unresolved issues. The parties agreed[1] to be joint managing conservators and that the children would reside in Dallas County or the contiguous counties, but they did not agree who would have the right to designate the children's residence. They also agreed the children would attend Fairhill School in Plano and that Father would pay all expenses for them to attend the school, which would extinguish Father's obligation to pay $30,000 annually into the educational account. They agreed Father and his current wife, Stacy, would pay Mother $250,000, which would extinguish all prior debts Father owed Mother or her attorneys under other court orders. They also agreed that before either parent could file a new suit against the other parent, other than an enforcement action, the suing parent would be required to post $100,000, half of which would be disbursed immediately to the parent who had not brought the suit. The parties also agreed that in the event of a dispute regarding the agreement, the mediator, the Honorable Linda Thomas, would be the binding arbitrator of the dispute. Mother, Father, Stacy and their attorneys signed the agreement. Judge McCraw approved and adopted the agreement the next day.

After the mediated settlement agreement, the remaining issues were possession of the children and the rights, powers, and duties of the parents as conservators, including which parent would have the right to designate the children's primary residence; child support; and the terms for Father's payment of the $250,000. Following a trial before the court, Judge McCraw signed the

---

[1] Some of these terms were expressly provided in the agreement, and others constituted the mediator's interpretation and clarification of the agreement.

"Final Order" in this case, which provided that Father would have the right to designate the children's primary residence, Father would have possession of the children on weeknights during the school year and Mother would have possession on the first, third and fifth weekends, and Mother would pay child support of $1,333.22 per month. The final order entered judgment against Father for the agreed debt to Mother for $250,000 at 5 percent interest.

After entering the final order in this case, Judge McCraw recused himself. The Honorable Robin Sage was then appointed to hear any further matters.

## APPOINTMENT OF JUDGE McCRAW

In her first issue, Mother contends that all of the orders signed by Judge McCraw are void because there is no order of assignment in the file and no original authenticated copy of the assignment established pursuant to rule 77 of the Texas Rules of Civil Procedure. In her second issue, Mother contends that Judge McCraw's assignment was for one day only, March 9, 2009, and any orders signed by him after that date, including the order on appeal, are void.

Before Mother filed her notice of appeal, she filed a petition for writ of mandamus in this Court arguing that Judge McCraw's orders in this case were void because the judge was never properly assigned to hear the case. We denied relief because Mother "has not shown she is entitled to the relief requested." *In re Cary*, No. 05-10-01071-CV, 2010 WL 3620466 (Tex. App.—Dallas Sept. 17, 2010, orig. proceeding [mand. denied]). Mother then filed her notice of appeal on October 26, 2010.

On December 13, 2010, while the appeal was pending before this Court, Mother filed a motion in the trial court seeking to vacate all of Judge McCraw's orders as void for the reasons she argues in this appeal. *See In re Cary*, No. 10-1010 (Tex. 2010). On January 24, 2011, Judge Sage held a hearing on the motion and found that Judge McCraw had authority to hear the case at the time

—4—

he entered the challenged orders.

## No Assignment Order Filed in the Trial Court

In her first issue, Mother argues there is no order assigning Judge McCraw to hear the case on file in the trial court. When Mother's attorney on appeal investigated Judge McCraw's appointment, he learned that no copy of the order was filed in the trial court and that the parties and the administrative region's presiding judge, Judge Ovard, did not have a copy of any order appointing Judge McCraw. On August 27, 2010, appellant's counsel received by fax from Judge McCraw a document purporting to be an order appointing Judge McCraw and signed by Judge Ovard on March 9, 2009.[2]

The presiding judge of an administrative region has authority to appoint certain active and retired judges to hear cases as necessary. *See* TEX. GOV'T CODE ANN. §§ 74.052–.0551 (West 2005). These statutes do not require the order of assignment to be filed in the papers of the court or that the parties or the administrative region's presiding judge preserve a copy of the order. There is no requirement that an original or copy of the assignment order be maintained by anyone. Mother does not cite any authority requiring that the order be filed in the trial court.

Mother also argues we cannot consider the faxed copy of the order because Father did not comply with rule 77 for authentication of lost records and papers. If papers or records are lost or destroyed during the pendency of a suit, rule 77 permits the trial court, on agreement of the parties or on sworn motion and a hearing, to substitute a copy for the lost or destroyed original document and to have the copy filed with the clerk. *See* TEX. R. CIV. P. 77. The parties have filed a supplemental record containing the faxed copy of the order. Accordingly, the copy is part of the

---

[2] Printing on the bottom of the copy of the order in the record indicates it was sent by fax on March 9, 2009, August 25, 2010, and on the twenty-seventh day of an illegible month in 2010.

record.

Even if Mother does dispute the authenticity of the faxed copy of the order, that dispute is a fact issue for the trial court. Judge Sage heard Mother's complaints about the faxed order and found that Judge McCraw had authority to hear the case. We conclude the trial court resolved any fact questions concerning the authenticity of the faxed copy. We overrule Mother's first issue.

## The Terms of the Assignment Order

In her second issue, Mother contends that under the terms of the assignment order, the assignment of Judge McCraw was valid for only one day, March 9, 2009, and that any orders signed by Judge McCraw after that day are void. The assignment order in the record, which was the copy of the order faxed by Judge McCraw to Mother's attorney, states:

> Pursuant to Article 74.056, Texas Government Code, I hearby [sic] assign the:
> Honorable John L. McCraw Jr.,
>
> Senior Justice of The 5th Court of Appeals
> To the 380th District Court of Collin County, Texas.
>
> This assignment is for the period of 1 days [sic] beginning 3/9/2009, providing that the assignment shall continue after the specified period of time as may be necessary for the assigned Judge to complete trial of any case or cases begun during this period, and to pass on motions for new trial and all other matters growing out of cases tried by the Judge herein assigned during this period, or the undersigned presiding judge has terminated this assignment in writing, whichever occurs first.
>
> CONDITION(S) OF ASSIGNMENT (IF ANY):
>
> To hear Cause No. 380-54606-2203: In the Interest of [C.H.C.] and [S.M.C.], minor children.
>
> The Clerk is directed to post a copy of this assignment on the notice board so that attorneys and parties may be advised of this assignment, in accordance with the law.
>
> ORDERED this 9 day of March, 2009
>
> /s/ John Ovard

Printing on the faxed copy indicates it was faxed on March 9, 2009 at 14:29.

Mother argues that, under the terms of this order, Judge McCraw's assignment was only for March 9, 2009, which was the same day he was assigned. In interpreting the order, we must read it as a whole in the context in which it was issued and not permit form to prevail over substance. *See In re Richardson*, 252 S.W.3d 822, 829–30 (Tex. App.—Texarkana 2008, orig. proceeding).

Mother asserts, "it is clear that the order expressly limited Judge McCraw's assignment to one day, unless the trial of the case started on March 9, 2009." To read the order as permitting Judge McCraw to sit only on March 9, 2009 unless the trial began on that day would have made it impossible for him to consider any matters in this case. Father's petition to modify, which re-opened the case, was filed on January 29, 2009, only thirty-nine days before March 9. The rules of procedure require the court to give the parties at least forty-five days' notice of a trial setting absent the parties' agreement. *See* TEX. R. CIV. P. 245. Nothing shows the parties agreed to begin the trial on March 9. Thus, Judge McCraw could not have begun the trial on March 9. The only motion pending on March 9 was Father's motion asking the presiding judge to reconsider her order recusing herself. However, that motion had not been pending for the required three days before March 9.[3] *See* TEX. R. CIV. P. 21. Accordingly, there was nothing Judge McCraw could have done on March 9. To read the order as Mother requests would have meant that Judge McCraw was appointed to do nothing on March 9, and that after March 9, there would have been no trial judge in this family law case for an indefinite period of time.

---

[3] Father filed the motion on Thursday, March 5, 2009 and certified it was served on the other parties on that date. Rule 21 required the motion to have been served on the other parties "not less than three days before the time specified for the hearing." TEX. R. CIV. P. 21. Saturday and Sunday are not included in the computation of the three days. TEX. R. CIV. P. 4; *see Terry Johns Autos., Inc. v. State*, 721 S.W.2d 488, 489 (Tex. App.—Corpus Christi 1986, no writ). Thus, the motion had been pending for only one day before March 9, 2009.

The Texarkana Court of Appeals faced a similar issue. In *In re Richardson*, the court considered an assignment order identical to the one in this case except for the date of the order (February 28, 2007), the date the assignment began ("1 days [sic] beginning 2/28/2007"), the identity of the assigned judge (the Honorable Paul Banner), and the cause number and style of the case. *In re Richardson*, 252 S.W.3d at 824–25. The Texarkana court observed, "[W]e have an order which could either be read to grant authority for one day or to grant Judge Banner authority 'to hear' the particular case referenced." *Id.* at 829.

In *In re Richardson*, it was virtually impossible for the trial to begin on the day of the judge's appointment. *See id.* at 830. The Texarkana court stated it would not "read the order as an essentially useless exercise." Instead, the court concluded that the order gave the assigned judge "the authority to hear the named case on its merits" because to do otherwise the appellate court "would have to ignore the conditions of the assignment: 'To hear Cause No. 99C985-202; *Southwest Construction Receivables, Ltd, et al v. Regions Bank.*'" *Id.* at 829–30. Under the requirement that the court of appeals consider the order as a whole, it could not "simply ignore that language." *Id.* at 830. The court of appeals concluded the assigned judge had authority to hear the case after the date of assignment:

> The most reasonable reading of the substance of this order within the context in which it was issued is that Judge Banner was assigned to hear this case when Judge Pesek recused himself. By reconciling the language in the order taken as a whole and considering the context in which the order was issued, we conclude that Judge Banner has authority, pursuant to Judge Ovard's assignment order, to hear the underlying cause on its merits.

*Id.*

In this case, reading the order as permitting Judge McCraw to hear the case on March 9, 2009 only, unless the trial began on that date, would have made the order "an essentially useless exercise"

because there was no trial, motion, or any other proceeding Judge McCraw could have heard on that date. Considering the order as a whole and the context in which it was issued, we conclude the most reasonable reading of the order is that Judge McCraw had authority to hear the underlying cause on its merits, with that authority beginning on March 9, 2009 and continuing through the trial and determination of post-trial motions "and all other matters growing out of" the assigned case.

We conclude the orders signed by Judge McCraw after March 9, 2009 were not void. We overrule Mother's second issue.

## REQUIREMENT OF MATERIALLY AND SUBSTANTIALLY CHANGED CIRCUMSTANCES

Mother's fifth, sixth, and seventh issues concern the trial court's determination that a material change in circumstances had occurred after the 2006 order. In the fifth issue, Mother contends the trial court erred in considering events occurring after Father filed the motion to modify in determining whether there was a material change in circumstances. Mother's sixth and seventh issues concern the sufficiency of the evidence to show there was a change of circumstances. We conclude the parties waived the statutory requirement of changed circumstances by signing the mediated settlement agreement.

The Family Code permits the trial court to modify an existing order of conservatorship or possession of a child when "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the date of the rendition of the order or a mediated settlement agreement on which the order is based. TEX. FAM. CODE ANN. § 156.101(a)(1) (West Supp. 2012). Waiver is the intentional relinquishment of a right actually or constructively known, or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). Waiver is largely a matter of intent, and for implied

-9-

waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *Id.* There cannot be waiver of a right unless the person sought to be charged with waiver says or does something inconsistent with an intent to rely upon such right. *Id.* Waiver is ordinarily a question of fact; however, when the surrounding facts and circumstances are undisputed, as in this case, it is a question of law. *Id.* at 156–57.

We presume Mother had knowledge of the statute. *See Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 n.3 (Tex. 1990) ("all persons are presumed to know the law"). When Mother signed the mediated settlement agreement, she agreed to the trial court's modification of the order to the extent set forth in the agreement. Included in the agreement was the term that the trial court would determine the "[t]erms and conditions of possession and access," the "[r]ights, privileges and duties of the [joint managing conservators]" and "[a]ny other issues currently pending before the 380th District Court." Mother's act of signing the mediated settlement agreement was inconsistent with her claiming the right not to have the existing order modified absent a showing of substantially and materially changed circumstances. Accordingly, we conclude Mother waived that requirement.

We overrule Mother's fifth, sixth, and seventh issues.

## CONTRACTUAL DEFENSES

In her third issue, Mother contends the trial court abused its discretion in upholding the mediated settlement agreement because it lacked consideration, any consideration failed, the agreement is ambiguous and lacks essential terms, there exists an underlying mutual mistake, and there was no meeting of the minds between the parties.

Family Code section 153.0071 provides that a mediated settlement agreement in a suit affecting the parent-child relationship "is binding on the parties" if the agreement contains a

-10-

prominently displayed statement that the agreement is not subject to revocation and the agreement is signed by each party and each party's attorneys present at the mediation. TEX. FAM. CODE ANN. § 153.0071(d) (West 2008). The agreement in this case meets these requirements.[4] If an agreement meets the requirements, "a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *Id.* § 153.0071(e).

It is not clear whether the defenses of lack of consideration, failure of consideration, mutual mistake, and lack of meeting of the minds apply to mediated settlement agreements under section 153.0071. Father argues they do not apply because subsection (e) provides that judgment may be entered on the mediated settlement agreement "notwithstanding . . . another rule of law," and the defenses of lack of and failure of consideration, mutual mistake, and lack of meeting of the minds are "another rule of law."[5] Courts have considered the merits of the defenses of mutual mistake and no meeting of the minds to mediated settlement agreements under section 153.0071(e) and the similar provision in section 6.602(c) without discussing the effect of the "notwithstanding . . . another rule of law" provision. *See Toler v. Sanders*, 371 S.W.3d 477, 481–82 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Milner v. Milner*, 360 S.W.3d 519, 524 (Tex. App.—Fort Worth 2010),

---

[4] The first page of the agreement states, in boldfaced, underlined, and capitalized type:

> Agreement is binding.
>
> The parties hereto agree that this mediated settlement agreement is binding on said parties and is not subject to revocation or modification unless same is in writing and signed by all attorneys and their clients. Both parties acknowledge that the court may enter judgment based upon this mediated settlement agreement and that neither party may withdraw their consent to the terms of this MSA [mediated settlement agreement].

(Emphasis omitted.) The agreement is signed by Mother, Father, Stacy (Father's current wife), and their attorneys.

[5] In *Milner v. Milner*, the Fort Worth Court of Appeals vacated a judgment on a mediated settlement agreement concerning the division of marital property under Family Code section 6.602, concluding there was no meeting of the minds. *See Milner v. Milner*, 360 S.W.3d 519, 524 (Tex. App.—Fort Worth 2010), *aff'd on other grounds*, 361 S.W.3d 615 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 6.602(c) (West 2006). Section 6.602 contains the same language as section 153.0071 concerning the binding nature of the mediated settlement agreements: "a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *Compare* FAM. § 6.602(c) *with id.* § 153.0071(e). The Texas Supreme Court agreed the case needed to be remanded, but it did so because the agreement was ambiguous and therefore unenforceable. *See Milner v. Milner*, 361 S.W.3d 615, 623 (Tex. 2012). The supreme court did not discuss whether the defense of a lack of meeting of the minds constitutes "another rule of law."

*aff'd on other grounds*, 361 S.W.3d 615 (Tex. 2012); *Mullins v. Mullins*, 202 S.W.3d 869, 875–78 (Tex. App.—Dallas 2006, pet. denied). No court appears to have considered the affect of that language on the defenses of lack of consideration and failure of consideration. Without determining whether any of these defenses are applicable to an agreement under section 153.0071, we conclude Mother has failed to show the trial court reversibly erred in entering judgment on the agreement.

### Absence of Consideration

We first consider whether the agreement lacked consideration. "Consideration is a present exchange bargained for in return for a promise. It consists of either a benefit to the promisor or a detriment to the promisee. The detriment must induce the making of the promise, and the promise must induce the incurring of the detriment." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991) (citations omitted). A lack of consideration occurs when a contract, at its inception, does not impose obligations on both parties. *Chung-Loon, LLC v. Cergon, Inc.*, No. 05-10-01171-CV, 2012 WL 1678105, at *7 (Tex. App.—Dallas May 15, 2012, no pet.). The agreement in this case imposed obligations on both parties: it made them joint managing conservators, which includes many obligations. *See, e.g.*, TEX. FAM. CODE ANN. § 153.073–.076 (West 2008 & Supp. 2012).

Mother argues the agreement lacked consideration because she gained nothing from the agreement.[6] Mother's argument overlooks the fact that, in the agreement, Stacy agreed to pay Mother the $250,000 and she signed the agreement. The evidence showed Father had no assets. Stacy, however, had a working interest in some oil and gas production and had investments in

---

[6] Under the 2006 order, Mother was the sole managing conservator, she had the right to designate the children's primary residence with no geographical restrictions, she had the exclusive right to make decisions concerning the children's education, Father was required to pay $30,000 annually into an educational account for the children over which Mother had sole control, and Mother held judgments against Father for over $500,000. Under the mediated settlement agreement, Mother was a joint managing conservator, the determination of the parent with the right to designate the children's primary residence was left to the trial court, the agreement required Mother to pay a litigation deposit of $100,000 before having the right to bring future suits, she lost the right to make decisions concerning the children's education because the agreement required the children to attend the Fairhill School, Father was relieved of the duty to pay $30,000 annually into the education account, and Father would be relieved of his judgment debt to her of over $500,000 by paying only $250,000.

commercial property and "some retail business." Stacy's inclusion in the agreement provided Mother extra security for payment of the $250,000, which was a benefit to Mother. We conclude the mediated settlement agreement was supported by consideration.

### Failure of Consideration

Mother also argues the consideration failed. Failure of consideration occurs when the promised performance fails because of some supervening cause after a contract is formed. *Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App.—Tyler 2010, no pet.); *US Bank, N.A. v. Prestige Ford Garland Ltd. P'ship*, 170 S.W.3d 272, 279 (Tex. App.—Dallas 2005, no pet.). Failure of consideration may result as a consequence of one party's failure to perform its obligations under the agreement. *US Bank, N.A.*, 170 S.W.3d at 279.

Mother argues the consideration of Stacy agreeing to pay the $250,000 and signing the agreement failed because Father testified at trial that he and Stacy no longer had $250,000 available to pay Mother due to the attorney's fees they incurred during the time between signing the settlement agreement and the trial. However, Father testified he could make payments of $8000 per month toward the $250,000 if he was not required to pay a substantial amount of Mother's attorney's fees. The final order entered judgment against Father for the $250,000 at five percent interest. The judgment did not award either side attorney's fees. Nothing in the record shows Father would be unable to pay $8000 per month as he testified.

The mediated settlement agreement provided that "the terms and conditions of payment [of the $250,000] will be negotiated in a subsequent agreement or tried at the same time any remaining issues are tried." This provision shows the $250,000 was not due at the time the settlement agreement was signed. There was no "subsequent agreement," so "the terms and conditions of payment" awaited the trial court's determination. When Father testified at the hearing, the trial court

had not yet decided the terms of payment, so the $250,000 was not due. Father testified that he could make payments of $8000 per month. The record does not show Mother made a demand for the $250,000 after the final order was signed. Accordingly, Mother has not shown there was a failure of consideration.

Mother also argues there was failure of consideration because Stacy's liability on the $250,000 was not included in the final order. Stacy was not named or served in the lawsuit. Persons who are not named or served in a lawsuit are not parties, and a judgment against a person who is not a party is void. *See Schlueter v. Carey*, 112 S.W.3d 164, 172 (Tex. App.—Fort Worth 2003, pet. denied). Because Stacy was not a party, the trial court could not impose liability on her in the final order. The record does not show that Mother has made a demand to Stacy or tried to sue Stacy on the agreement for payment of the $250,000, nor does Mother argue that the agreement is not enforceable against Stacy. Accordingly, Mother has not shown that Stacy is not liable under the agreement even though she is not included in the judgment on the agreement.

### Mutual Mistake

Mother argues the settlement agreement is invalid as to the $250,000 payment because of mutual mistake. An agreement may be avoided where the parties contracted under a misconception or ignorance of a material fact. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990); *see Smith-Gilbard v. Perry*, 332 S.W.3d 709, 713 (Tex. App.—Dallas 2011, no pet.). A unilateral mistake does not provide grounds for relief even though it results in inequity to one of the parties. *Smith-Gilbard*, 332 S.W.3d at 714. The mutual mistake urged in this case was the trial court's ability to determine the terms and conditions for payment of the $250,000. The agreement provided that the terms and conditions could be "tried at the same time any remaining issues are tried." At trial, the court stated that, absent an agreement between the parties as to a payment schedule, all the

court could do was enter a judgment for Mother for the $250,000. Mother's attorney agreed with the court's analysis. The judgment provides:

*Extinguishment of Prior Debt*

The parties have agreed that the sum of $250,000.00 is to be paid to [Mother]. Payment of the sum of $250,000.00 will extinguish all prior debts that [Father] currently owes [Mother] or her attorneys under any existing court order. The terms and condition[s] of payment of the $250,000.00 are as follow[s]: IT IS ORDERED that [Mother] is granted a judgment against [Father] in the amount of $250,000.00, such judgment bearing interest at 5% per annum compounded annually, from the date the judgment is signed until paid, for which let execution issue if it is not paid.

Mother argues the judgment conflicts with the mediated settlement agreement because the judgment did not set forth the terms and conditions for payment. We disagree. The judgment set forth the terms and conditions: the full amount was due immediately as a judgment against Father and it would earn interest of five percent per year compounded annually. Mother argues there was mutual mistake because the trial court did not clarify whether the prior judgment debts Father owed would be extinguished upon full payment, partial payment, or as long as Father made monthly payments. Mother, however, failed to show that Father mistakenly expected the trial court to make that determination. Accordingly, Mother failed to prove the mistake, if any, was mutual.

We conclude Mother has not shown the agreement was the product of mutual mistake.

### No Meeting of the Minds

Mother also argues the mediated settlement agreement was not a valid contract because there was no meeting of the minds. "To create an enforceable contract, the minds of the parties must meet with respect to the subject matter of the agreement and all its essential terms." *Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 455 (Tex. App.—Dallas 2012, pet. denied).

Mother argues there was no meeting of the minds between the parties regarding the provision that Father and Stacy would pay Mother $250,000:

–15–

> The provision of the MSA [mediated settlement agreement] expressly contemplates not only [Father] would pay $250,000, but Stacy as well; the Final Order provides only for a judgment against [Father]. Stacy testified to her belief that the obligation would be enforceable against her, and to her understanding that her agreement to be jointly liable for payment was pivotal to the agreement. This is sufficient evidence to show there was no meeting of the minds, as well as mutual mistake, by the parties in entering into the MSA.

(Footnote omitted.) We disagree. The basis of Mother's argument is that Stacy's agreement to pay Mother $250,000 is not enforceable against her because judgment was not entered against her in this case. As discussed above, the trial court could not enter judgment against Stacy in this case because she was not a party to the litigation. Her lack of party status was well known to Mother and Father and was repeatedly pointed out during the trial. The mediated settlement agreement did not state that a judgment for $250,000 would be entered against Stacy in this case. Instead, it states, "The parties agree that . . . Father and Stacy [C.] shall pay to Mother the sum of $250,000 . . . ." The record does not show that Mother has tried to enforce the agreement against Stacy, so Mother cannot demonstrate that the agreement is not enforceable against Stacy. Mother's claim of no meeting of the minds (as well as mutual mistake) on this ground fails.

Mother also asserts there could not have been a meeting of the minds because, comparing the circumstances before and after the mediated settlement agreement, "it seems obvious that there could not possibly have been a meeting of the minds. The MSA represents a complete windfall for [Father]. [Mother] does not benefit at all from the MSA." After describing the differences between the 2006 and 2010 orders, *see supra* note 6, she states, "It is incredulous to believe that such a result was intended by [Mother] or her attorneys at the time the MSA was entered into. There could not have been a meeting of the minds between the parties which foresaw this result." Mother's assertion is speculation unsupported by legal argument, citation to the record, or to any authority. Accordingly, we conclude it is waived. *See* TEX. R. APP. P. 38.1(h) (appellate brief must contain a

–16–

clear and concise argument for the contentions made, with appropriate citations to authorities and the record.); *In re J.P.*, 365 S.W.3d 833, 837 (Tex. App.—Dallas 2012, no pet.) (failure to cite applicable authority or provide substantive analysis waives issue on appeal).

We conclude Mother has not shown there was no meeting of the minds.

## Missing Terms

Mother argues the mediated settlement agreement was not enforceable because it left terms open for future negotiation. As the supreme court stated:

> In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. The material terms of the contract must be agreed upon before a court can enforce the contract. Where an essential term is open for future negotiation, there is no binding contract.

*T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) (citations omitted). The mediated settlement agreement provided that certain terms would be left open for future negotiation, or failing that, for determination by the court at trial.[7]

The agreement stated,

The parties further agree that the remaining issues shall be negotiated with Hon. Linda Thomas

- Terms and conditions of possession and access

- Rights, privileges and duties of the JMCs

- Any other issues currently pending before the 380th District Court.

If said issues cannot be resolved through mediation with Hon. Linda Thomas, they

---

[7] Mother states that the parties signed the agreement at the end of the first day of mediation and agreed to return the next day to negotiate further regarding essential terms, including the terms and conditions of child possession and access by the parties; their rights, duties, and powers as joint managing conservators; and the terms and conditions of payment of the $250,000. In support of this statement, Mother cites to the record of the hearing on her motion to set aside the mediated settlement agreement. At that hearing, Mother's attorney questioned a witness about the events occurring at the mediation. Father objected to this line of questioning, and the trial court sustained the objection. Mother's attorney then presented the evidence Mother now cites in a bill of exceptions. The record does not show this testimony was admitted into evidence. Mother does not argue on appeal that the trial court erred in excluding this testimony. Accordingly, this testimony was not before the trial court, and we may not consider it. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006); *Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 779 n.3 (Tex. App.—Dallas 2011, no pet.).

will be submitted for trial before Judge John McCraw, sitting for the 380th District Court.

The issue in this case is whether the agreement is enforceable despite leaving issues open for further negotiation.

In the *T.O. Stanley* case, quoted above and cited by Mother, the plaintiffs sued the bank for allegedly breaching an agreement to make available to them a $500,000 line of credit. *T.O. Stanley*, 847 S.W.2d at 221. The plaintiffs, however, presented no evidence of the interest rate for the loan or for the repayment terms. *Id.* at 222. Thus, "the alleged contract failed for indefiniteness." *Id.* As the supreme court stated, "These elements were material to this contract, and a court is not free to supply them." *Id.* In the case before us, however, the parties expressly agreed that the trial court was to provide the missing terms. Also, by agreeing that the undecided issues could be determined by the trial court, the parties essentially agreed that the undecided terms were not material to the enforcement of the terms on which the parties did agree. We conclude that the agreement is not rendered unenforceable because terms were left open for further negotiation or for determination by the trial court.

## Ambiguity

Mother next argues the mediated settlement agreement is unenforceable because three of its terms are ambiguous. When construing a contract, our primary goal is to determine the parties' intent as expressed in the terms of the contract. *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.*, 297 S.W.3d 248, 252 (Tex. 2009); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Contract language that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law. *Chrysler Ins. Co.*, 297 S.W.3d at 252; *Coker*, 650 S.W.2d at 393. A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than

-18-

one meaning. *Coker*, 650 S.W.2d at 393; *United Protective Servs., Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App.–Dallas 2005, no pet.).

*Payment of $250,000*

Mother asserts the agreement is ambiguous as to the payment of the $250,000. The mediator clarified the $250,000 payment by determining that payment of the $250,000 would extinguish all prior debts Father owed Mother and her attorneys under any court order existing on February 8, 2010. Mother argues the contract is ambiguous because it does not specify when the debts owed by Father are considered satisfied—on payment of the $250,000 or on the signing of the mediated settlement agreement. The final order is in accordance with the mediator's determination.[8] Mother does not assert that the mediator lacked authority to make this determination. The mediator resolved this ambiguity by determining that payment of the $250,000 would extinguish the prior judgment debt.

Furthermore, the record does not show that Mother, since the signing of the final order, has sought recovery of the judgment debts existing on February 8, 2010. Until Mother brings suit for, and is denied recovery of, the pre-existing debts, any injury to Mother due to this asserted ambiguity will be contingent or remote. Accordingly, this issue is not ripe for determination. *See Patterson v. Planned Parenthood of Hous. & SE Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998) ("[R]ipeness asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur,

---

[8] The final order provides,

*Extinguishment of Prior Debt*

The parties have agreed that the sum of $250,000 is to be paid to [Mother]. Payment of the sum of $250,000 will extinguish all prior debts that [Father] currently owes [Mother] or her attorneys under any existing court order.

The terms and conditions of payment of the $250,000 are as follow[s]: IT IS ORDERED that [Mother] is granted a judgment against [Father] in the amount of $250,000, such judgment bearing interest at 5% per annum compounded annually, from the date the judgment is signed until paid, for which let execution issue if it is not paid.

rather than being contingent or remote.").

Mother also argues the provision is ambiguous because the terms of payment were not included in the agreement. However, the agreement provided "the terms and conditions of payment will be negotiated in a subsequent agreement or tried at the same time any remaining issues are tried." This provision has a clear meaning—if the parties cannot work out the terms and conditions of payment, then the parties could try that issue with the remaining issues.

We conclude Mother has not shown the provisions concerning the payment of $250,000 are ambiguous.

*Enrollment at Fairhill School*

Mother asserts the agreement's terms concerning the children's enrollment at Fairhill School are ambiguous. The agreement stated, "The parties agree that . . . The children shall remain enrolled in Fairhill School . . . ." During the trial, a dispute arose between the parties as to whether, pursuant to the agreement, the children were to remain enrolled at Fairhill School indefinitely or only through the end of the spring 2010 semester. The mediated settlement agreement provided, "In the event of a dispute regarding reducing this MSA to an order, [the mediator] will be the binding arbitrator to such disputes." The trial court remanded this issue, and several others, to the mediator for determination. The mediator then determined, "The children shall remain in Fairhill School until further order of the court or further agreement of the parties." The final order is in accordance with the mediator's determination.[9] Mother does not assert that the mediator lacked authority to make

---

[9] Concerning the children's school enrollment and costs, the final order provides,

> School - IT IS ORDERED that the children shall remain enrolled in Fairhill School until further order of the court or further agreement of parties.

> IT IS ORDERED that [Father] is authorized to execute all documents needed to facilitate enrollment and attendance of the children, the subject of this suit in the Fairhill School independent of any other person until further order of the court.

> IT IS FURTHER ORDERED that the Father . . . shall pay all expenses for the children in attending Fairhill School until further

this determination. The mediator's determination resolved any ambiguity.

*Parenting Facilitator*

Mother also asserts the mediated settlement agreement is ambiguous concerning the appointment of a parenting facilitator. The agreement provided, "The parties agree that . . . Dr. Alexandra Doyle shall serve as a Parenting Facilitator. If Dr. Doyle is not available for this responsibility, the parties will determine by mutual agreement another parenting facilitator." The mediator also determined and clarified the agreement: "Any parenting facilitator acting under the MSA executed on February 8, 2010, shall serve as long as the court deems it necessary or further agreement of the parties." During the trial, Dr. Doyle testified that because she was the children's counselor, she believed it would be inappropriate for her to be the parenting facilitator. She recommended Patrick Savage be appointed as the parenting facilitator. The trial court's final order does not appoint a parenting facilitator. Instead, it provides an exception to the $100,000 litigation-deposit requirement "if either party files suit to appoint a parenting facilitator, as this issue was reserved for further review by the Court." However, the parties informed us that while the case was pending on appeal, the parties agreed on the appointment of a parenting facilitator and the trial court appointed the parenting facilitator. Accordingly, the ambiguity, if any, for the appointment of a parenting facilitator when the parties do not agree is no longer a controversy in this case. Appellate courts decide only those issues in which a controversy exists. *State for Protection of Cockerham v. Cockerham*, 218 S.W.3d 298, 302 (Tex. App.—Texarkana 2007, no pet.). Because there is no existing controversy regarding this issue, we do not decide it.

We conclude Mother has not shown any ambiguity in the mediated settlement agreement warrants reversal in this case. We overrule Mother's third issue.

---

order of the court or further agreement of the parties - [Father] shall pay 100% and [Mother] shall pay 0% of the cost.

## LITIGATION DEPOSIT

Mother also contends the $100,000 litigation-deposit requirement in the mediated settlement agreement is void because it is against public policy. A court can declare a contract void as against public policy and refuse to enforce it. *See Peeler v. Hughes & Luce*, 868 S.W.2d 823, 829 (Tex. App.—Dallas 1993), *aff'd*, 909 S.W.2d 494 (Tex. 1995); *see also James v. Fulcrod*, 5 Tex. 512, 520 (1851) ("That contracts against public policy are void and will not be carried into effect by courts of justice are principles of law too well established to require the support of authorities . . . ."). In determining whether an agreement is against public policy, the court looks for a tendency in the agreement to be injurious to the public good. *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 557 (Tex. 2001); *Sacks v. Dallas Gold & Silver Exch.*, 720 S.W.2d 177, 180 (Tex. App.—Dallas 1986, no writ).

The mediated settlement agreement stated:

Each party will be required to post $100,000 before any new suit may be initiated against the other party or their respective spouses or family members, and that $50,000 of said money shall be immediately disbursed to the party who has not brought the new cause of action.

The $100,000 sum shall not be required to be paid in the event that one of the parties is required to file an enforcement action.

The trial court's final order added exceptions to the litigation-deposit requirement not found in the mediated settlement agreement. The order provided:

IT IS ORDERED that a party bringing suit against the other party or their respective spouses or family members will be required to post $100,000.00 before any new suit, other than a suit brought to enforce the terms of this Order or an emergency suit alleging imminent danger of a child, may be initiated. IT IS FURTHER ORDERED that $50,000.00 of said money shall be immediately disbursed to the party who has not brought the new cause of action and the balance placed in the registry of the Court.

IT IS ORDERED that the parties will be exempt from the requirement to post

-22-

$100,000 as dictated above for the following:

(1) If either party files for one report back hearing in December 2010;

(2) The first time [Mother] files a Motion to Modify Child Support and Medical Reimbursement;

(3) if either party files suit to appoint a parenting facilitator, as this issue was reserved for further review by the Court.

Mother argues the litigation-deposit requirement violates public policy because it "discourages the parties from filing suit where the safety or welfare and best interest of the children are at issue." We disagree with this argument for three reasons. First, the litigation-deposit requirement does not apply to "an emergency suit alleging imminent danger of a child." Second, the Family Code's provisions permitting the trial court to award the parties their costs and attorney's fees may tend to discourage parties from bringing suit, yet those provisions have never been held to violate public policy. *See* TEX. FAM. CODE ANN. §§ 106.001, .002 (West 2008). And third, Mother has not shown the litigation-deposit requirement would discourage her or Father from bringing suit where the safety, welfare, or best interest of the children were at issue.

The litigation-deposit requirement is an agreement to provide the opposing party with a fund to pay its attorney's fees and costs while defending the suit instead of the party having to wait until the end of the litigation to obtain an order for the payment of costs and attorney's fees. Mother does not explain why the litigation-deposit requirement violates public policy when orders to pay costs and attorney's fees do not violate public policy. Nothing in the agreement or the trial court's final order prohibits the court in subsequent suits from ordering the litigation deposit returned to the parent bringing the suit and ordering the other parent to pay the costs and attorney's fees of the parent bringing suit.

Mother argues it cannot be good public policy to require a parent to wait until a child is in

imminent danger of serious harm before she may file suit. The litigation-deposit requirement does not require the parent to wait to file suit until an exception to the litigation deposit arises. However, Mother argues that having to wait to file suit is the result of the litigation-deposit requirement when the parent does not have the money available or "where the amount required is substantial, like the $100,000 required under the MSA here." However, the record does not show that Mother lacks the money to make the deposit.[10] Mother did not testify or present other evidence that the litigation-deposit requirement would discourage her from posting the money and filing suit if she believed the safety, welfare, and best interest of the children were at issue.

In cases where the parents have repeatedly litigated almost all aspects of their parental relationship, with the enormous expenditure of resources that entails, the parents' decision to impose litigation restrictions on themselves that discourages further litigation but does not close the courthouse to the parties may well be in the best interest of the children. The record in this case shows the parties have each spent many hundreds of thousands of dollars litigating conservatorship and possession of the children since they filed for divorce in 2003, and both parties have been ordered at different times to pay the other side's attorney's fees. Nothing in the record shows that the litigation-deposit requirement would prevent either party from bringing suit in the future. If the requirement will encourage the parties to resolve their differences between themselves, rather than resorting to litigation to resolve all their differences, without effectively preventing the parties from filing suit when necessary, then the litigation-deposit requirement may promote the children's best interest.

We conclude Mother has not shown the litigation-deposit requirement violates public

_____

[10] In a hearing on a motion to sign temporary orders, Mother testified that, before she met her current husband, she had to sell her house and liquidate her retirement savings to pay her litigation expenses. At the time of trial, Mother and her husband had been married about a month. The record of the trial contains no evidence of Mother's financial resources at the time of trial..

policy.[11]

## DEVIATION FROM THE MEDIATED SETTLEMENT AGREEMENT

In her fourth issue, Mother contends the trial court abused its discretion by entering a final order that deviated from and changed provisions in the mediated settlement agreement. Mother asserts the final order varies from the agreement by (1) not including an order that Stacy pay the $250,000, (2) not appointing a parenting facilitator, (3) deleting Father's continuing obligation to fund an education account, and (4) changing the language regarding the litigation deposit.

### Lack of an Order Requiring Stacy to Pay the $250,000

As discussed above, the agreement did not require entry of an order that Stacy pay the $250,000, and, because Stacy was not a party, the trial court lacked authority to enter such an order. *See Schlueter*, 112 S.W.3d at 172. Mother has not argued that Stacy became a party to the litigation by her signing the mediated settlement agreement. The final order did not vary from the mediated settlement agreement by omitting an order that Stacy pay the $250,000.

### Lack of Appointment of a Parenting Facilitator

The mediated settlement agreement provided, "A Parenting Facilitator will be appointed to assist the parties in resolving future disputes concerning the children. . . . Dr. Alexandra Doyle shall serve as a Parenting Facilitator." The mediator's determination and clarification of the agreement provided, "Any parenting facilitator acting under the MSA . . . shall serve as long as the court deems it necessary or further agreement of the parties." The final order did not appoint a facilitator but stated the $100,000 litigation deposit would not apply "if either party files suit to appoint a parenting facilitator, as this issue was reserved for further review by the Court." Subsequently, the trial court

---

[11] Whether a litigation-deposit requirement might violate public policy under other circumstances, such as where one or both parties lack the resources to pay the deposit, is not before us, and we make no determination of that issue.

appointed a parenting facilitator. Accordingly, any abuse of discretion by the trial court for failing to appoint a parenting facilitator is now moot.

### Deleting Father's Obligation to Fund the Education Account

Mother argues the final order varies from the mediated settlement agreement because the order provides that Father's payment of the children's Fairhill School expenses "extinguishes the Father's obligation to pay the $30,000.00 Educational Fund each year."

The 2006 order required Father to "[f]und $30,000 in an education account each year for the children's education" until the children graduate from high school. The mediated settlement agreement provided, "The children shall remain enrolled in Fairhill School[.] Father shall pay all expenses for [the] children in attending Fairhill School." The mediator determined and clarified this part of the agreement, stating, "The Father shall pay all expenses for the children in attending Fairhill School until further order of the court or further agreement of the parties. The payment of the Fairhill School expenses extinguishes the Father[']s obligation to pay the $30,000.00 Educational Fund each year effective December 5, 2009."

Mother argues there was no basis for the mediator's conclusions because the mediated settlement agreement is silent as to the educational fund; the mediator's interpretation improperly added to and changed the terms of the agreement; and if the parties had intended to eliminate the education account, they would have put such a provision in the mediated settlement agreement.

The 2006 order gave Mother the exclusive right to make decisions concerning the children's education. Their education would then be funded by the education account Father would annually fund with $30,000, with Mother having sole discretion how to spend the education account. Under the mediated settlement agreement, Mother lost the exclusive right to determine the children's education because the agreement provided that the children would remain enrolled at Fairhill School.

At the trial of this case, and before the mediator issued the clarification of the agreement, Father testified he believed the education account, and his duty to contribute $30,000 annually into the account, were eliminated by the agreement's requirement that he pay the costs for the children to attend the Fairhill School. Mother testified that the mediated settlement agreement did not resolve the education account. Pursuant to the agreement, the trial court turned over the dispute to the mediator.

Under the facts of this case, the mediator could reasonably conclude that the purpose of the account, to provide Mother with the funds to send the children to the education institution she desired, terminated when Mother lost the exclusive right to decide the children's education, when the parties agreed to continue the children at the Fairhill School, and when Father agreed to pay the costs for the children to attend the school. Even though the agreement does not mention the education fund, the mediator's determination was reasonable and did not add to or change the terms of the agreement.

Mother also argues the trial court's finding of fact that Father's payment of the children's expenses for attendance at Fairhill School extinguished his obligation to pay into the education account was unsupported by the evidence. This finding was supported by Father's testimony that the agreement extinguished the education-account obligation and by the mediator's determination and clarification of the agreement, which was admitted into evidence.

We conclude the final order did not vary from the mediated settlement agreement by providing that Father's payment of the Fairhill School expenses extinguished his obligation to pay into the education account.

### Litigation Deposit

Mother asserts the final order's provisions concerning the litigation deposit for subsequent

suits varies from the terms of the mediated settlement agreement. In the agreement, the only exception to posting $100,000 before bringing a new suit was "in the event that one of the parties is required to file an enforcement action." The mediator did not provide clarification or determination of this provision. The final order included the exception for enforcement actions as well as exceptions for (1) an emergency suit alleging imminent danger of a child; (2) a filing "for one report back hearing in December 2010";[12] (3) Mother's first motion to modify child support; and (4) if either party files suit to appoint a parenting facilitator.

Even if the trial court did abuse its discretion by including exceptions to the litigation-deposit requirement that were not included in the mediated settlement agreement, we do not reverse unless the error complained of harmed the party. See G & H Towing Co. v. Magee, 347 S.W.3d 293, 297 (Tex. 2011).

> The harmless error rule states that before reversing a judgment because of an error of law, the reviewing court must find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause "the rendition of an improper judgment," or that the error "probably prevented the appellant from properly presenting the case [on appeal]."

Id. In this case, Mother presents no argument that the added exceptions to the litigation-deposit requirement harmed her, and we fail to see how any of the extra exceptions denied Mother's rights. All of the exceptions permitted Mother the opportunity to bring suit in certain conditions without the necessity of first posting $100,000. We conclude any error in deviating from the mediated settlement agreement was harmless. We overrule Mother's fourth issue.

---

[12] The trial court stated the purpose of the "report back" hearing was to permit the court to consider whether the children should remain enrolled at Fairhill School following the first semester after the court's final order. The record does not show whether either party filed for the "report back" hearing. Father states in his appellee's brief, without citation to the record, that neither party filed for the report back hearing. Because the litigation-deposit requirement required the parties to post the $100,000 before bringing suit, and the final order required the parties to file for a report back hearing in December 2010, more than two years ago, the propriety of the exception to the litigation-deposit requirement for the report back hearing is now moot.

## CHILD SUPPORT

In her eighth issue, Mother contends the trial court erred by imposing a monthly child support obligation when no evidence of Mother's income was introduced at trial. The trial court found Mother's monthly net resources to be $5,332.86 and ordered her to pay child support of twenty-five percent of that amount, $1,333.22 per month.

We review a trial court's order on child support for an abuse of discretion. *In re J.G.L.*, 295 S.W.3d 424, 426 (Tex. App.—Dallas 2009, no pet.). Abuse of discretion occurs when a trial court acts in an "arbitrary and unreasonable manner" or "without reference to any guiding rules or principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We cannot presume the trial court's judgment to be arbitrary or unreasonable if it is supported with evidence of a "substantive and probative character." *In re K.N.C.*, 276 S.W.3d 624, 626 (Tex. App.—Dallas 2008, no pet.). When the abuse of discretion standard applies, complaints about the legal and factual sufficiency of the evidence are not independent grounds for asserting error; however, they are relevant factors in determining whether the award is arbitrary or unreasonable. *In re J.G.L.*, 295 S.W.3d at 427. In determining legal sufficiency, we consider all the evidence, crediting evidence in support of the verdict if reasonable jurors could, and disregarding evidence contrary to the verdict unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005); *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 842 (Tex. App.—Dallas 2011, no pet.). If there is more than a scintilla of evidence to support the finding, the evidence is legally sufficient. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). If the

evidence furnishes a reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact, then there is legally sufficient evidence, more than a scintilla, to support the fact. *Id.*

Mother testified during the trial that she was self-employed, but neither side introduced evidence during the trial of her earnings. Nor was there any other evidence of Mother's net resources. After the trial, during a hearing on the entry of the court's final order, Father told the court that Mother had previously testified at a hearing on a motion for the court to sign temporary orders that she earned "[a]bout 100,000 a year." Father argues the trial court did not abuse its discretion in using evidence during a pretrial hearing when Mother testified to her income.

The trial court may not judicially notice testimony from a prior hearing on a temporary order unless such testimony is properly admitted into evidence. *In re J.C.*, 346 S.W.3d 189, 192–93 (Tex. App.—Houston [14th Dist.] 2011, no pet.). In order for testimony from a prior hearing or trial to be considered in a subsequent proceeding, the transcript of that testimony must be properly authenticated and entered into evidence. *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The transcript of Mother's testimony at the pretrial hearing was not authenticated and offered into evidence at the trial. Accordingly, it was not evidence that could be considered by the court for ordering Mother to pay child support. *See In re J.C.*, 346 S.W.3d at 192–93; *Guyton*, 332 S.W.3d at 693.

Because there was no evidence to support the trial court's findings concerning Mother's net resources, we conclude the trial court abused its discretion in ordering Mother to pay child support of $1,333.22 per month. We sustain Mother's eighth issue.

## CONCLUSION

We reverse the trial court's judgment as to the order that Mother pay child support of

$1,333.22 per month. We remand the cause to the trial court for determination of the amount of child support, if any, to be paid. In all other respects, we affirm the trial court's judgment.

_____
LANA MYERS
JUSTICE

101375F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF C.H.C. AND S.M.C., CHILDREN

No. 05-10-01375-CV

Appeal from the 380th District Court of Collin County, Texas. (Tr.Ct.No. 380-54606-03). Opinion delivered by Justice Myers, Justices Moseley and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** in part and **AFFIRMED** in part as follows: We **REVERSE** the trial court's judgment as to the order that appellant, Jennifer Cary, pay child support of $1,333.22 per month, and we **REMAND** the cause for further proceedings on the amount of child support, if any, to be paid. In all other respects, we **AFFIRM** the trial court's judgment. We **ORDER** that the parties each bear their own costs of this appeal.

Judgment entered January 3, 2013.

LANA MYERS
JUSTICE